## THE PEOPLE *v.* AH HOW.

CONFESSIONS OF GUILT—HOW ADMITTED.—Where confessions of guilt are offered against a defendant, and objected to by him on the ground that they were not voluntarily made, the question thus presented is for the Court alone, and must be decided before the testimony goes to the jury.

CONFESSIONS OF GUILT—WHEN NOT ADMISSIBLE IN EVIDENCE.—Where the defendant made confessions of guilt under the influence of threats of arrest for the crime of which he was then and there accused, by the person threatening him, or to an officer having him in custody, upon promises of escape if he would confess, and where such confessions did not lead to the discovery of any facts or circumstances by which their truth was established : *held,* that such confessions were inadmissible as evidence against him when on trial for the crime so confessed.

APPEAL from the County Court, Tuolumne County.

The defendant, with another, was indicted for the crime of grand larceny, and the defendant was tried and convicted.

The defendant moved for a new trial upon the ground of error in law occurring at the trial, and duly excepted to by him. The motion was denied by the Court, and the defendant appealed from the judgment rendered and the order of the Court denying a new trial.

The alleged errors of law relied on by the defendant on said motion and this appeal, were set forth in a bill of exceptions, so much of which as is essential to present the questions decided by this Court is as follows, to wit :

" On the trial of the case, A. M. Hill was called as a witness on the part of the prosecution, and testified as follows :

" I am Constable at Chinese Camp, in this county, and was Constable during the month of December last. I had

several conversations with defendant in reference to the robbery of this Italian, Vignola, and before the arrest of defendant.

" Question—State the conversations you had with defendant.

" Objected to by defendant's counsel, on the ground that defendant is entitled to and asks to interrupt the statement of the alleged confession, for the purpose of showing that it was improperly extorted, and that its admission, if improper, would prejudice the minds of the jury. The District Attorney states that he intends to prove the truth of the confession by other competent evidence, and asks to introduce the confession as a predicate for such other evidence.

" Objection overruled—to which ruling defendant's counsel then and there excepted. The witness then testified to defendant's confession to witness of the larceny, as follows :

" I had several conversations with defendant, at Chinese Camp, in reference to the robbery of Vignola, before defendant's arrest; it was a few days before the arrest. I charged the defendant with robbing the store at Robinson's Ferry, (Vignola.) I told him I had found out all about the facts in the case, and I knew they had done it; I said 'they,' as defendant was with some one else at the time. I told them all the circumstances I had learned in regard to the matter, and that from these facts I knew they were the ones who did it, and they might as well out with it. I told them that I knew they had done well and made a good thing of it, and times were hard, and I wanted some of it. I told them they got between sixteen and eighteen hundred dollars. I told them it was all right, but times were hard, and I was not making much, and I must have a *divide*—some of the cash. This conversation was to this defendant. He told me to come around that evening, and he would see me. We talked along in a friendly way, and I left. In the evening I went around, and another Chinaman gave me twenty dollars. I saw defendant afterwards, and he asked me if I got some money, and I said I got twenty dollars. I did not say much

then, but after that I talked with him about the robbery, and told him I thought he ought to do better by me than that; that they got a pistol and watch, and I had lost my pistol and wanted one. Defendant said he did not get a watch, and the pistol was an old one, and he would not give me that one, but would buy me a new one if I wanted one. When I laid it to him, and told him how much they had got, he said when people were robbed, or there was a fire, they always lied, and said they lost more than they did, and that they did not get anything like that much. I don't know as he said or called any names, but we were speaking of this robbery at the time. I asked them if they had a hard job to .get in, and if they got through a wall or in a window, as it was a stone building. He said that they picked the lock—took a piece of wire and picked the lock. I asked him how he got into the safe. He said the safe was a very strong one ; that it had three keyholes and two bars. Said then, or afterwards, about packing the safe off, but it was too heavy. These conversations were before the arrest. I did not talk with defendant much after the arrest. He sent for me when in jail, and I went to see him. I went to see him once with Bourland. Up to the time of defendant being arrested and put in jail, he did not know that I had anything to do in causing his arrest. When I went in with Bourland, he still was ignorant of my having anything to do with his arrest. He considered me as a friend while in jail— a silent partner in the firm. He said they could not do much for me this time, and next time, when they done better, they would do better by me.     *     *     *     *     *

" *Cross Examination.*—I said nothing to defendant relative to the robbery until I had gained his confidence ; I then charged him with it, and told him I knew all about it. I told him all the things Vignola had told me, and where anything was lacking I filled in such things as my judgment would suggest as most likely to occur. I added in this connection, ' It was all right, they had done well, times were hard, and I must make something too; that I knew all

about it, and he might as well come out with it, and divide, and if he did not I should arrest him.' This was in a small room in a China house. I was armed with a pistol and knife. Defendant told me to call around that night, etc. * * * I suppose it was in consequence of the threats of the arrest and of my telling him it was all right, and of his confidence in me, that the defendant made whatever confessions he did make to me in relation to the larceny. I did not ask for anything till I thought I could get it when I asked for it. I did not at any time caution him that anything he might tell me could be given in evidence against him, if I should arrest him. * * * I got the confessional statements I have testified to, after the threats of arrest and the getting of the twenty dollars. I brought defendant to jail on Sunday, December 16th. On Monday morning following, I had a conversation with him in jail, in presence of the Sheriff, Mr. Bourland. It was about matters I had talked with him before. We held out inducements to him in jail, for the purpose of getting additional information to get the stolen money, that if he would tell he could get out, etc. Neither of us cautioned him that what he might say could be given in evidence against him.

"Defendant's counsel moved to strike out the confessional statements testified to by A. M. Hill, on the ground that the same were * * * extorted from defendant by undue influences held out by said Hill to defendant, after defendant had been accused by said Hill of the crime with which he is charged in the indictment, and threatened with an arrest therefor, unless he would 'come out,' etc. * * *

"The Court overruled the objection, to which ruling the defendant's counsel then and there excepted. * * *

"J. L. Bourland, called as a witness for the prosecution, testified as follows: I am Sheriff of Tuolumne County. I was present at the time of a conversation between defendant and Hill. Defendant was at that time in jail, under arrest for this larceny. I did not caution defendant that anything he might say could be given in evidence against him. I was

knowing to the fact that defendant had made similar statements before to Hill.    *    *    *    *    *    *    *

" It was here admitted by the prosecution that the witness used every artifice and inducement in his power to draw out the confession from the defendant which it is offered to prove by the witness.

" Whereupon, defendant's counsel, taking the admission and the testimony above stated of the said Bourland, moved to exclude all testimony offered by said Bourland as to alleged confessional statements made by defendant to said Bourland, on the ground that the same were made while defendant was in said Bourland's custody, as Sheriff, for the larceny charged in the indictment, and were obtained by undue influence.    *    *    *    *    *    *    *    *

" The Court overruled the objection and motion, and defendant's counsel then and there excepted. Bourland then testified as follows : Hill and defendant were talking over the matter, and defendant said they got about three hundred dollars *in coin,* and divided between them. That they took the dust to Columbia, and left it at Sing O Sing's store ; that was at his cousin's, I think he said. He said he gave the pistol away. Defendant spoke of getting into the store at Robinson's Ferry ; said they did not have a hard time getting into the store, but did in getting into the safe ; said they intended to pack it, but could not.    *    *    *

" At the close of the testimony in the case, defendant's counsel again moved to strike out from the evidence the confessional statements testified to by A. M. Hill and J. L. Bourland, on the grounds above stated.    *    *    *    *

" The Court overruled the motion, to which ruling defendant's counsel then and there excepted."

The other facts are stated in the opinion of the Court.

*Edwin A. Rogers,* for Appellant, argued that the Court below erred in admitting under the defendant's objection the evidence of witnesses Hill and Bourland of the defendant's

confessions of guilt, without first giving an opportunity to test their admissibility; and cited 1 Whar. Am. Cr. L., Sec. 698; Rosc. Cr. Ev. 56. That the confessions made by defendant were not admissible in evidence, because extorted by undue influence and by threats; and cited 1 Rosc. Cr. Ev. 38, 39; 1 Whar. Am. Cr. L., Secs. 685, 699; Arch. Cr. Pr. 413, 423.

*J. G. McCullough, Attorney-General,* for the People, argued that from the record it appeared the confessions of defendant, given in evidence, although enforced, yet had led to the discovery of facts which showed their truth; and cited *People* v. *Ah Ki,* 20 Cal. 177; 1 Greenl. Ev., Secs. 131, 132; *Com.* v. *Knapp,* 9 Pick. 511: *State* v. *Moore,* 1 Haywood, N. C., 556; 1 Phil. on Ev., 4th Am. ed., 555, note 159; 2 B. & H. Lead. Cr. Cas. 219.

By the Court, SANDERSON, J.:

Whether a confession is admissible or not is a question for the Court to determine. Hence when the prosecution undertakes to prove a confession, and the defense objects upon the ground that the confession was involuntary, the Court must pass upon the objection before any testimony as to the confession is received. (1 Wharton Am. Crim Law, Sec. 698.) Whether the confession was voluntary, or made with that freedom which is necessary to make it admissible as evidence, is a question for the Court, and like all other questions touching the admission of evidence, must be decided before the testimony goes to the jury.

Both confessions—the first to Hill, the Constable, and the second to Hill, and Bourland the Sheriff—were made, as the case clearly shows, under the influence of threats, and therefore inadmissible.

There was nothing in the confessions which led to the discovery of the stolen property, or any other facts or circumstances by which their truth was established. Hence

they do not fall within the rule in *Ah Ki's Case.* (20 Cal. 179.)

Order denying a new trial reversed and a new trial granted.

Mr. Justice RHODES expressed no opinion.