(Superior court of ·Cincinnati.)
General Term 1900.

THE SAMUEL WYMOND COOPERAGE COMPANY v. JOHN B. THOMPSON.
Before JACKSON, DEMPSEY & WRIGHT, JJ.

---

It was in issue whether barrel manufactured for a certain purpose, leaked because of defective material and poor workmanship; and it was held *irrelevant* to prove that other barrels. made by the same cooper, during the same season, through the same process of manufacture, out of timber cut from the same forest, were tight.

Written reports, regularly emanating in the ordinary course of the public business of United States, out of the Treasury Department, and regularly prepared as part of his official duty, by an official or deputy, are substantive evidence of the existence of facts concerning which it was the duty of the official to inform himself and to make the report.

Affirmed by Supreme Court without report May 7, 1901, 45 W. L. B., 319.

---

WRIGHT, J.,

Jackson and Dempsey, JJ., concur.

The facts found at special term are in all respects sustained by the evidence: the court was right therefore, in its finding of a warranty, in its assessment of the amount of the damages, as well as in its determination that Thompson, defendant in error, had not in his treatment of the barrels been negligent.

Whiskey barrels manufactured by The Wymond Cooperage Company had, to the number of several thousand, been sold and delivered to John B. Thompson, a distiller, under a warranty that they were "of first class white oak timber thoroughly seasoned and charred, free from worm holes, seed holes, knots, dottings and other imperfections, and all of first class workmanship; and guaranteed to hold the whiskey as well as any first class barrels that could be made." At the trial it was in issue that the barrels were deficient in respect to material and workmanship, so that much whiskey was lost through leakage.

By way of establishing the goodness and soundness of the barrels in question the Cooperage Company undertook to prove the goodness and soundness of other barrels manufactured and sold during the same season, to other distillers; supplementing this by offer of proof that this other cooperage "was made out of the same character and kind of timber that was furnished to Thompson and the wood was cut at the same time and that it was made by the same character of machine and that the entire manufacture and supervision in the inspection of the staves as originally cut and before being put into the barrels and after put into the barrels was exactly the same as in Mr. Thompson's case; and to show further that the barrels that were sent to Squibb & Co. were made and billed out and shipped without reference to the time, that they were put into the cars, and shipped without discrimination in the choice of barrels that were sent to Mr. Squibb or Mr. Thompson." (Offer of proof, bill of exceptions p. 506.)

In the abstract the proposition may ·savor of a certain attractiveness, though it seems to me to carry along with it an innate lack of proving power upon the point of whether there were leaks in Thompson's barrels, or whether they had been properly cared for.

It was in issue whether the barrels delivered to Thompson were defective; whether other barrels delivered to other distillers were good and sound, is in the main collateral, and of itself is devoid of probative force upon the point of the Thompson barrels; there is not yet shown any such homogenity between the Thompson barrels and the other barrels as that the abilities of the one are in any way indicative of the abilities of the other. These barrels, both the Thompson and the others, are shown to have been composite things made not

[COPYRIGHT, 1901, BY CARL G. JAHN ¨

of one part, but of many; the several parts shaped, moulded and prepared by mechanical contrivance, to be joined into the composite whole by manual labor; if the defects complained of by Thompson were such as could have been occasioned or obviated or in any way affected by the mechanical contrivances through which the parts were put, the evidence might have been proper to be heard because of the scientific fact, that as a machine works once, so will it work a second time; as a certain result is occasioned to material supplied to a machine, so will a like result follow to other material supplied under similar conditions. But the defects complained of in no respect concerned the workings of machines, being originally inherent in the material used and in the workmanship employed after the work of machines was over with.

To the extent that a mechanical device is shown to have produced in one instance an effect upon material supplied it, the character of the concrete article produced is of probative tendency upon the point of how other similar material was affected when submitted to the machine; but at bar no such proposition is presented by the evidence tendered; the mechanical contrivances could not, according to the nature of things, have had an effect upon the presence or absence of the alleged defects; defects of material an of manual workmanship. The fact that all staves and heads of the Thompson barrels and of the other barrels had been subjected to even the same machine, had no tendency in so far as the defects alleged are concerned, to show correspondence or homogenity between the Thompson barrels and the others.

A likelihood of misconceiving the question lies in according prominence to the proposition that materials were submitted to machines; if it be not forgotten that machines and their work had no effect concerning the defects alleged, it seems to me to be plain enough. For all that mechanical appliances had to do, if the defects were present in the material used, they were present as well after the machine work was done, for the machines were not calculated to and could not have removed them; the mechanical part of the process of manufacturing barrels bore neither one way nor the other upon the points in issue, and thus far the offer of proof makes out in regard to the other barrels nothing which tends to show them alike the Thompson barrels in respect of the issue made; that is to say in respect of the condition and quality of material used in Thompson's barrels.

In respect of the other particulars put forth in the offer of proof, they can be accorded no probative tendency upon the presence or absence of seed holes, worm holes, knots, etc.,

in the Thompson barrel. One particular was this: it was proposed to prove that all timber after having been riven, passed an inspection; there appears to have been about this inspection nothing which assured or even indicated soundness and goodness for the staves which passed it; indeed the inspector gave evidence (Weedmann's deposition pp. 23 & 24) that seed holes and cat-faces were not visible in the rough and that it was possible for all the timber to have been unmerchantable although it had passed inspection; the inspection discovered only visible defects, and the evidence is that the alleged defects may have been invisible. Such so-called inspections ought not to be accorded that probative effect which is fit to be given to mechanical processes; imperfect staves passed it as readily as did perfect ones; when the process of manufacture is examined in detail there appears to have been no part of it which would have excluded defective material; it is therefore out of reason that the Thompson barrels were sound because the Squibb barrels turned out to be sound.

Neither is inference to be drawn that the timber of all trees taken out of a forest is sound because sound timber is found to have come out of that forest during the same season; there is no such likelihood; insects may molest certain trees and suffer others to remain unhurt; may indeed, and do infest a part of one tree without assailing other parts.

The authorities presented by the counsel for plaintiff in error fail of bearing out the admissibility of this evidence; reliance is placed upon City of Findlay v. Pertz 74 Fed. Rep., 685. "An action against the city for the purchase price of certain automatic separators adapted to be attached to the orifice of a natural gas well to separate the oil and water from the gas. There was evidence for defendant that the machines had not worked automatically, and were incapable of doing the work for which they were purchased."

It was received in evidence that another separator had worked automatically at Kokomo, But there was no issue there, and no claim made that the Findlay separators were defective in respect of material used in their construction; the contention was that the mechanical principle involved was incapable of producing the result claimed for it The working of the Kokomo separators was but an exposition of the efficiency of the mechanical principle; this could be shown in no other way than by experimental tests, and when or where tests happened to have been made was of no consequence. Evidence showing that a separator had worked, made out as a scientific fact, the efficiency of the principle of construction.

Had complaint been that the Findlay ma-

chines failed to work because of defective material used in their construction, or because of poor workmanship, it would have been on these points irrelevant to show that a good separator had been used at Kokomo. So at bar; if the complaint had been that no receptacle constructed out of white oak timbers bound with hoops of iron was capable of retaining whisky, it would have been important upon this inquiry to have shown that receptacles so constructed had successfully held whisky at Squibbs' distillery or at any other distillery; but the fact that Squibbs' barrels held whiskey, even in connection with the additional proof offered, is inherently incompetent to indicate the condition or quality of the material used in the Thompson barrels. It is no evidence that a workman constructed a certain barrel properly, to show that he constructed another barrel properly; neither is it evidence of the goodness of certain timber, to show that other timbers were good and fit; and as has been pointed out, neither the effect of mechanical appliances nor the efficiency of mechanical principles had any place in the question, for neither had to do with the defects complained of, their presence or their absence. The evidence was properly excluded. The learned counsel for the plaintiff in error contended against the admission of certain documentary evidence which was received at the trial as bearing upon the quantity of whisky escaped from the barrels. The papers were presented in connection with the testimony of witnesses who had been gaugers in the Revenue service of the United States at Thompson's distillery. It was sworn by these witnesses that the rules and regulations of the Revenue Department required gaugers to prepare in triplicate upon printed forms, daily reports of the quantity of whisky contained in packages guaged and measured by them at the time the packages went into, as well as when they were released from bond.

All packages were at the time of entering bond, given a serial number, which served to identify it as it was withdrawn and regauged. The laws of the United States required at least duplicate daily reports of these measurements, one to be transmitted to the collector of the district, the other to the Commissioner of Internal Revenue. The regulations formulated by the commissioner required the third report to be delivered to the distiller. The witness Grigsby upon exhibition to him of certain of the reports identified them as having been made by him and delivered to Mr. Thompson, the distiller, in accordance with the rules. It appeared further that as the gauging and measuring was in progress, the number of gallons contained in each package was stamped or cut upon the surface of the wood; Grigsby had provi'ed himself with a little book wherein for his convenience he immediately made skeleton memoranda of the measurements, and upon returning to his office desk made out from this little book his triplicate daily reports; neither rule nor law required such a little book to be kept by the gaugers. Upon this, it was objected that the reports were not evidence and that the little book ought to be brought. The evidence was admitted. We do not regard the reports as having been received upon the theory of memoranda from which the witness might refresh his recollection and then testify to the ultimate facts. The reports were received as themselves substantive evidence of the result of the measurements. Had the reports offered been those returned either to the collector or to the commissioner instead of those sent to the distiller, no question of their admissibility could be made. The courts having to deal with the question, have universally been of opinion and have held that a record or re-written report of a public nature required by law to be made by an official or by a deputy official, is substantive evidence of the facts recited therein by requirement; the rule grows out of first, a presumption in favor of the correct and accurate performance of public official duties, and second the general and almost universal experience of human kind, that such records and reports can with safety be relied upon as correct; and third, that in the nature of things, there is but little, if any, probability of mistake. And this rule is not subject to qualification or restriction according to the vehicle in which the official charged with the duty, happened to have carried his information prior to the time of actually preparing the record or report.

That is to say, if reports are competent because of this official character, and because of the duty of the official who prepared them, they are not renderel incompetent for the reason that he carried figures to his desk in a little book, instead of carrying them in his head.

There is, in the books much to be found about the records, entries and reports made in the ordinary course of business, about entries against interest made by persons since deceased, and some cases wherein the courts have required that to enable it to admission, the particular entry must have been made in the ordinary course of business, by a person since deceased, and in addition, that it shall have been against the interest of the person making it. It is out of harmony with experience and with reason, that an abstract and general rule applicable alike to all kinds of cases of entries, records and reports, can be

laid down; courts are constituted to decide cases, not abstract questions, and to that end must mould and suit an application of general principles to each case of facts which comes along. It cannot be declared that the admission of book entries must be limited to those kept by persons since deceased, note the instance of account books of mercantile establishments wherein the custom is for one to sell goods and return the sales to another who makes the book entry; neither are all entries given an evidential character by the death of him who makes them; the question of death is important only in cases where the entry is against the pecuniary interest of the decedent. And again, declarations of deceased persons are not limited to those which may have been the subject of writing or book entry, an oral declaration made against the pecuniary interest of the deceased declarant is as between even third parties, substantive evidence of the fact declared on. We regard the foregoing rules as each an independent principle in the law of evidence and that there is no fixed rule for their composite application; this must be according to the facts of each case.

While the question here has nothing to do with entries made by persons since deceased, yet the doctrine may properly be mentioned for purposes of elimination to avoid misapprehension of the authoritative cases which deal with both principles, and which in some instances accord them a composite application without undertaking a discussion of the full scope of either; and so that the evidence at bar may be referred for admissibility to its own nature, which classes it within the principle which admits entries, records and reports required to be kept or made in the regular and usual conduct of the public business; the manner and method of preparing the reports presented at bar, the purposes which they served, the requirements under which they came into existence, the official character of the persons who prepared them, the place and conduct of the business of which the preparing of the reports was an integral part, raise so strong a conviction of their truth and accuracy as that they of their own nature are possessed of an evidential and probative force upon the points whereof they speak. The gaugers had no interest one way or the other, and while not required by the express requirements of the statute law yet the reports were those of a sworn public officer and were required to be made by a high public authority, the Internal Revenue Department of the United States; and more than that, the making of them was an integral fact in the regular progress and ordinary course of the public business of the United States; they were emanations from a depart-

ment of the Government occasioned by the ordinary usual and regular course and conduct of its business. This is in no sense the case of an isolated private memorandum made by a witness or copied by him from his book of memoranda and brought to court; copied either idly, or of some hidden and ultimate design. It cannot be maintained that the reports were merely copies of the gauger's little book and therefore not originals; they were more than mere copies, being prepared upon blanks filled in by figures taken from the little book.

They depend for their evidential character not upon the existence or absence of a memorandum book, but upon their character as reports of a public nature, regularly made by a sworn officer under requirements imposed upon him by his official duty; and further because these reports were substantive facts transpiring in the ordinary and regular course and conduct of the public business.

We regard the memorandum book as of neither consequence or importance; as has been seen, the duty was to make the reports, not the memorandum, and items for a report can as well be carried by the gauger upon a paper, or in a book, as in his memory.

We fin no error in the proceedings of the trial court and affirm the judgment therein rendered.

Pogue & Pogue and C. B. Matthews, for plaintiff in error.

Paxton, Warrington & Boutet, for defendant in error.

———

Note—Synopsis of the Briefs of counsel in Supreme Court.

*C. B. Matthews* and *Pogue & Pogue.* for *Plaintiff in error:*

The court erred in refusing to admit the evidence of Squibb, Monford, Stephens, Pogue, Weedman and other witnesses to show the action and condition of other barrels made in the same season by the Cooperage Co., in the same way, out of the same character of wood, shipped without reference to any particular person, and cared for in a manner similar to what Thompson said his was treated, and which barrels should show that there was no excess outage from them comparatively. The witnesses were experts in their line of preparing and taking care of and treating barrels, and, therefore, the testimony, with the reasons above suggested, was competent in this case. Findlay v. Pertz, 74 Fed. Rep., (U. S. C. C. App., Ohio), 685; 35 W. L. B., 371; Ames v. Quimby ,106 U. S., 342, 348.

The word 'relevant' means that any two facts to which it is applied, are so related to each other that, according to the common course of events, one, either taken by itself, or in connection with other facts proves or

renders probable the past, present or future existence or non-existence of the other. Stephens on Evidence (Reynold's Ed.), sec. 5; Burgner v. Humphrey, 41 O. St., 340; Remy v. Olds, 34 Pac. Rep., 218; Pike v. Fay, 101 Mass., 134; Ohio Valley R. R. v. Watson, Admr., 93 Ky., 654; W. U. Tel. Co.v. Levi, 47 Ind., 552; City of Ft. Wayne v. Coombe, 107 Ind., 75; Cleveland v. Wynant, 114 Ind., 525; S. M. & M. Co. v. Schard, 15 Colo., 197; Eidt v. Cooper, 127 Mass., 522; Williams v. Taunton ,125 Mass., 34; Pain v. Walker, 4 Allen (Mass.), 168; Walker v. Wakefield, 39 Vt., 246; Stambaugh v. Smith, 23 O. St., 584; Whittaker on Evidence, sec 97; Isbell v. N. Y. & N. H. R. R., 25 Conn., 556; Phelps v. W. & S. P. R. R. Co., 83 N. Y., 130; Rockford Gaslight & Coke Co. v. Ernst, 68 Ill. App., 300; Dist. of Columbia v. Arms, 107 U. S. 519; Quinlan v. Utica, 74 N. Y., 603; Aurora v. Brown, 12 Bradw., 122; Calkins v. Hartford, 33 Conn., 57;

2. The gauges offered in evidence, and to which objection was taken in the depositions of the gaugers who gauged the whiskey when it was put into the warehouse were improperly admitted, because they were not shown to be the original entries. and the original entries were not shown to have been lost. Whittaker on Evidence, 2; Marclay v. Schultz, 29 N. Y., 346; Stephens on Evidence, Art. 64, 65 and 71 (Ed. 90); N. Y. v. S. A. R. R. Co., 102 N. Y., 579; Wharton on Evidence, section 518.

3. The little memorandum books, made by Ingram as to the condition of the barrels when they were taken out of bond, were not admissible in evidence, for the reason that he had an independant recollection. Books of this character are only admissible when witness has not an independent recollection of them; and if he can by looking at them, refresh his memory, then, he should not be permitted to introduce this character of evidence. Kelsea v. Fletcher, 48 N. H., 282; People v. McLaughlin, 44 N. E. Rep. (N. Y.), 1017; Flood v. Mitchell, 68 N. Y., 507, 508.

If Ingram's testimony showing the comparative conditions existing between the barrels made between the fall of '90 and '91 and the barrels made in the season previous was not admissible nor even relevant to any Monford and others intended to be offered for the cooperage company under the first proposition was admissible.

5. According to Thompson's warranty. the cooperage company was to be responsible for the whiskey lost to them through defective cooperage. When this whiskey was lost, and the time when it was lost, no one was able to determine, and if defendant was to be responsible to Thompson for whiskey lost through defective cooperage it was only to be through defective cooperage it was only to be responsible to him for its value at the time of its being lost, and, therefore, the price charged against it was excessive in the judgment, and the plaintiff not having fixed on the

value, the judgment was improperly rendered against defendant and for that reason should be reversed.

*Paxton & Warrington,* for Defendant in Error.

The testimony of Squibbs and others was admissible, then, the evidence of Squibb, issue in the case, but was purely collateral and lacking a probable tendency on.

The most that was offered to be shown was, that the barrels delivered to other persons than Thompson were made "out of the same character and kind of timber that was furnished to Thompson and the wood was cut at the same time, and that it was made by the same character of machines."

If such testimony had been received on the theory that it was entitled to weight upon any issue whatever, we should have been diverted from the investigation into the real condition of the particular barrels in controversy, and have been trying other cases and not this case. C. L. & W. R. R. Co. v. Fredenbur, 3 O. C. C. Rep., 23, at p. 30; affirmed without report by Supreme Court, 23 W. L. B .434; Greenleaf on Evidence, section 50; Lincoln v. Taunton Copper Mfg. Co., 9 Allen, 181; Holcomb v. Hewson, 2 Camp. 391; Stockton Combined H. & A. Works v. Glenn Falls Ins. Co., 121 Cal. 167; Albany & Rensselaer Company v. Lunberg, 121 U. S. 451; Houston & T. C. R. Co. v. Wilson (Tex.), 50 S. W. 156; Mayers v. T. & H. Building Co., 116 Ala., 634; N. Y. & N. J., Tel. Co. v. Bennett, 42 Atl. Rep., 759; Morris v. Haas, 54 Neb., 579.

2. The cases cited on this point by counsel for plaintiff in error in their brief, are all plainly distinguishable and irrelevant. They may be resolved into: 1. Where another device or article than the one directly in controversy was allowed to be referred to and its workings or effects described by way of comparison or illustration, the exact identity of that device or article, both in quality of material and manufacture of component parts, with the one in controversy, was either so obvious as not to be controvertible, or was so overwhelmingly proved. That a mechanical device works once in a particular way, so will it work a second time. is a scientific fact. But the defects in the barrels could in no way be remedied by the machinery used in this case, as they were inherent in the material used and the workmanship employed after the work of the machines was over with. Findlay v. Pertz. 74 Fed., 681-5. 2. Where the existence, quality or quantitiy of an unknown or unexplored or unmeasured ore, coal, or the like the like, within certain lands, is in issue, expert geologists who have experimented in adjacent lands so as to ascertain ma be allowed to employ the information so obtained from other lands as the basis of opinion-evidence that similar articles in kind, quality or quantity exist within the lands in

controversy. Stambaugh v. Smith, 23 Ohio St. 584. 3. Where, in an issue as to negligence of an employer at the suit of an employe respecting the condition of a machine at a given time, evidence as to the action or performance of the same machine at prior times under like conditions is held to be admissible, the facts describing such prior action are in the nature of experiments to show the actual condition of the machine at the time in controversy. This, however, is simply using the same machine at different times to show how it in fact must have operated at a particular time, and thus to charge the employer with constructive notice of its condition. District of Columbia v. Armes, 107 U. S. 519; Brooklyn Street R. R. Co. v. Kelley, 6 O .C. C. 155; Root v. Monroeville, 16 O. C. C. 617.

As to Remy v. Olds, 34 Cal. Rep., 218, an earlier decision of the same court, Fox v. Harvester, etc., Works, 83 Cal. 333, cannot be reconciled with Remy v. Olds, and the latter decision was subsequently approved in Stockton v. Glenn Falls Insurance Co., 121 Cal., 180, decided after Remy v. Olds.

Ohio Val. Ry. Co. v .Watson, Adm'r, 93 Ky., 654, 9, is really an authority in our favor as the class of testimony there alluded to was not admitted.

All vitally differ in their facts and in legal principles from the facts and the rule that should control the case at bar. There would be no way to reconcile them with the action of this court in affirming as it did the case of Cleveland, Lorain & Wheeling R. R. Co. v. Fredenbur (3 O. C. C. 23), as before shown.

3. The admission of the reports of the gaugers was not error, although the memorandum book from which they were made out was in existence. There was no law requiring use of such a book. From these memoranda the reports in duplicate were, at the end of each day's work, filled in the large printed forms furnished and required to be made by the laws of the United States and the Internal Revenue Department. Such entries are original. Faxon v. Holils, 13 Mass., 427; Arnold v. Sebin, 1 Cushing, 531; Smith v. Sanford, 12 Pickering, 139; Ball v. Gates, 12 Metcalfe, 491; Harwood y. Mubry, 8 Gray, 250;Miller v. Shay, 163; Imhoff v. Richards, 48 Neb., 590.

These books were at most merely corroborative of the guager's report, and were offered with that purpose in view. Imhoff v. Richards, 48 Neb., 590; Miller v. Shay, 145 Mass., 162; Costello v. Costello, 133 Mass., 355; Dugan v. Mahoney, 11 Allen, 572; McCormick v. P. C. R. R. Co., 49 N. Y., 303; Flood v. Mitchell, 68 N. Y., 507.

5. The barrels did not hold the whiskey in accordance with the guaranty, and the damage suffered by Mr. Thompson was in consequence the difference between the amount of whiskey gauged in and that gauged out at the market value, without regard to the disposition which Thompson had made of the whiskey.

Brown v. Bigelow, 10 Allen, 244; Muller v. Eno, 14 N. Y., 597; Wheelock. v. Berkeley, 138 Ill., 153; Western Twine Co. v. Wright, 44 L. R. A., 438, 441. Wheelock v. Berkely, 138 Ill., 153; Joslin v. Irvine, 6 H. & N., 512; Giles v. Morrison, 50 Barb., 50; Atkins v. Cobb, 58 Ga., 86; McClure v. Williams, 65 Ill., 390; Sutherland on Damages ,425, et seq.