[Sac. No. 262. Department One.—June 10, 1898.]

## STOCKTON COMBINED HARVESTER AND AGRICULTURAL WORKS, Respondent, v. GLENS FALLS INSURANCE COMPANY, Appellant.

FIRE INSURANCE—AWARD OF LOSS—DIRECTION TO ARBITRATORS—PLEADING—AMBIGUITY—INCONSISTENT COUNTS.—In an action to recover for insurance on the property of plaintiff destroyed by fire, where the complaint averred in one count that the question of loss was submitted to arbitrators, who, after due investigation, fixed the aggregate loss of plaintiff at $90,000, and that the loss was adjusted at that sum, and averred in another count that the defendant and other insurers instructed and directed the arbitrators to fix and adjust the aggregate loss and damage of plaintiff at $90,000, and that the loss was so adjusted, the complaint is not demurrable for ambiguity and uncertainty, by reason of inconsistency and contradiction in the two counts, there being no ambiguity or uncertainty in either count considered alone.

ID.—CODE PLEADING—DEMURRER TO SEPARATE COUNTS.—A demurrer under subdivision 7 of section 430 of the Code of Civil Procedure, to a particular count of a pleading, on either of the grounds therein mentioned, cannot be aided by reference to another count, or to a separate cause of action found in the complaint; and a cause of action arising out of the same transaction may be separately stated in different ways in different counts of the complaint, even though they are inconsistent with each other, without being demurrable for ambiguity or uncertainty merely by reason of such inconsistency.

ID.—CROSS-COMPLAINT—TRIAL—WAIVER OF ANSWER—APPEAL.—Where the defendant answered in part by cross-complaint, to which no formal answer was made by the plaintiff, but no judgment upon the pleadings was moved for at the trial, and no objection was made to the introduction of evidence for want of such formal answer, and the cause was tried by both parties as if all the allegations of the cross-complaint were denied, it cannot be urged upon appeal for the first time that the defendant was entitled to judgment upon the pleadings for want of an answer to the cross-complaint.

ID.—PROMISE OF INSURANCE COMPANY—IMMATERIAL VARIANCE—WAIVER OF OBJECTION.—Where the complaint alleged a promise of the insurance company defendant to pay a specified sum as its proportionate amount of the loss, on or before a specified date, and the court found that defendant promised to pay that sum in full settlement for its proportionate amount of said loss within sixty days from the time when formal proofs of loss were prepared, and that the same were prepared and presented to defendant at a date sixty days anterior to the date specified in the complaint, the omission to plead the fact that payment was to follow the proofs of loss does

not constitute a material variance between the pleading and finding; and it is too late to urge the objection to such variance upon appeal for the first time, no objection having been made to the evidence in the court below upon that ground, and plaintiff being thus deprived of an opportunity to amend the complaint to obviate the objection of variance.

ID.—ACTION UPON AGREEMENT TO PAY LOSS—DECISION UPON FORMER APPEAL —CHANGE OF FACTS—CONFLICTING EVIDENCE.—Where it was held upon a former appeal that a cause of action upon an agreement to pay the loss after it had been ascertained by arbitrators was distinct from a cause of action upon the policy, and that a finding that no such promise was made was fatal to a recovery upon such a cause of action; and upon a second trial upon the same cause of action the court found, upon conflicting evidence, that such promise was made, the decision upon the former appeal does not control the case upon the changed facts, nor can this court upon a second appeal review the record of the first trial to ascertain the relative weight of the proofs adduced upon the two trials; and where there is some evidence tending to support the finding as made upon the second trial, it will not be disturbed upon appeal.

ID.—NEW ORAL AGREEMENT.—Where the agreement sued upon, though founded upon the policy, was in its essential elements the substitution of a new contract upon a new consideration to make and accept payment of less than the amount of the insurance, and less than the amount claimed under the policy, such new agreement need not be in writing, and where all the parties acted under such new agreement, and awards were made, and written proofs given and filed thereunder, and the amount of the ascertained loss would have been paid, but for the alleged discovery of frauds and concealments, it cannot be objected by defendant that the new agreement was void because not reduced to writing.

ID.—FRAUD—CONFLICTING EVIDENCE—FINDINGS.—Where the evidence is conflicting as to alleged fraud and concealment of value on the part of the plaintiff, and there is sufficient evidence to support the findings of the court in favor of the plaintiff, they will not be disturbed upon appeal.

ID.—PRESENTATION OF BOOKS TO INSURERS—CREDIBILITY OF WITNESSES.— Where there is testimony tending to show that all of the books of the plaintiff were furnished to the defendant and other insurers, and fairly examined by them before the making of the award of the amount of loss, it is immaterial whether the books showed the cost of construction and value of the property insured; and the question whether the testimony of the witnesses was credible or worthy of belief was matter for the trial court to determine.

ID.—EVIDENCE—DECLARATIONS OF DECEASED AGENT.—Declarations of a deceased agent, who acted for all the insurance companies in the matter of the adjustment of loss, and assumed to represent them all in the submission to arbitration, were admissible as against the defendant insurance company.

Id.—VALUE OF MACHINES—REASONS FOR ESTIMATE.—When a witness had
testified that harvester machines destroyed by fire were unsalable,
and had no value except for the material that was in them, conced-
ing that he might properly have stated his reasons for so estimating
them in his evidence in chief, it is not reversible error to exclude
such reasons.

Id.—OPERATION AND VALUE OF MACHINES NOT DESTROYED.—The operation
and value of other machines not destroyed cannot be proved by the
defendant, to show the insufficiency of similar machines destroyed
by fire.

APPEAL from a judgment of the Superior Court of San
Joaquin County and from an order denying a new trial. Ansel
Smith, Judge.

The facts are stated in the opinion.

Van Ness & Redman, James H. & John E. Budd, and Frank
H. Gould, for Appellant.

J. C. Campbell, and Nicoll & Orr, for Respondent.

CHIPMAN, C.—This is an action to recover for insurance
on the property of plaintiff destroyed by fire. The cause was
tried by the court without a jury, and plaintiff had judgment,
from which and from the order denying motion for a new trial
this appeal is prosecuted upon bill of exceptions. The case was
once before tried and appealed to this court, and is reported in
98 Cal. 557.

Submitted upon the brief in this case, upon the same record,
are also two other cases, to wit: *Stockton etc. Works v. Hartford
Fire Ins. Co.*, No. 261; *Stockton etc. Works v. Hamburg-Magde-
burg Fire Ins. Co.*, No. 259.

Upon substantially the same record is one other case, to wit:
*Stockton etc. Works v. American Fire Ins. Co.* , *post*, p. 182, but
in which two points are urged by appellant not presented in the
other cases. The total insurance upon the property was $127,-
000; the aggregate amount claimed by plaintiff from all the de-
fendants is $90,000. The pleadings are verified.

The complaint contains three counts; the third was stricken
out on motion. The first count alleges that plaintiff presented
its proofs of loss immediately after the fire, which occurred
August 19, 1888, in accordance with the terms of the policies,

but that plaintiff and the insurers were unable to agree upon the amount of the loss, and thereupon all parties submitted the question of loss to the arbitrament of certain arbitrators, as the policies provided might be done,  viz., to James Brown and A. A. Snyder on the building, and to Fred Arnold and Alex. Neilson on all the other property; that said Brown and Snyder, after investigation, reported to the parties that the loss submitted to them was $22,360 on the building; that said decision and award has been accepted by the parties and has never been questioned or disapproved; that the said Arnold and Neilson, being unable to agree as to the amount of the loss submitted to them, thereupon, under the terms of the submission, selected one A. A. Snyder as an umpire; that these three, after due investigation, decided and reported to the parties that the loss submitted to them was $67,640 in the aggregate; that thereupon the insurers agreed with plaintiff, "as an adjustment of the entire of its said loss and damage to pay to said plaintiff the sum of $90,000," and that the loss was adjusted at that sum, of which the proportionate share of this defendant was $1,859.25, which defendant promised to pay; that the value of the entire insured property destroyed was greatly in excess of the said awards.

The second count differs from the first only in alleging that, upon the disagreement of the arbitrators, Arnold and Neilson, defendant and the other insurers "instructed and directed the said arbitrators, Arnold and Neilson, as aforesaid, to appoint and select one A. A. Snyder as an umpire to ascertain and agree upon the amount of the said loss and damage, . . . . and to adjust the same, and were instructed and directed . . . . to fix and determine the said loss and damage at such sum that the same, in addition to the said loss and damage ascertained, fixed, and determined by said arbitrators Brown and Snyder, as aforesaid, should equal the sum of $90,000 upon the entire of the said property insured by all of plaintiff's insurers."   The complaint then sets forth the several sums apportioned against the different properties insured, and the acceptance and acquiescence of the insurers in the awards thus made and their agreement to pay, etc.

1. Appellant urges its demurrer to the complaint on the ground of ambiguity and uncertainty, basing its objection upon

the inconsistency and contradiction in the two counts in this, that in one it is claimed that the awards were the result of due investigation and decision, while in the other the awards were alleged to be the result of consent and agreement without investigation. (Citing *Bell v. Brown*, 22 Cal. 671.) There is no merit in this point. It is not claimed that there is ambiguity or uncertainty in either count considered alone, but the claim is, that the first count is rendered ambiguous and uncertain by reason of allegations found in the second count, and *vice versa.* We do not think that a demurrer, under section 430, subdivision 7, of the Code of Civil Procedure, to a particular count, on either of the grounds therein mentioned, to wit, ambiguity, unintelligibility, or uncertainty, can be aided by reference to another count or separate cause of action found in the complaint. There is no suggestion that the causes of action separately stated in the two counts may not be united, nor is it suggested that either count fails to state a cause of action. Besides, we see no reason why a cause of action arising out of the same transaction may not be separately stated in different ways, even though they are inconsistent with each other. The defendant is permitted to plead inconsistent defenses (Code Civ. Proc., sec. 441), and there can be no good reason why the same rule should not apply to different counts of a complaint as well as to the answer.

2. Appellant claims that judgment should have been ordered for defendant upon the pleadings. Defendant answered in part by cross-complaint, and the claim now is, that certain of its allegations were admitted by a failure to deny them. We nowhere can find in the transcript, and our attention is not called to, any motion for judgment upon the pleadings at the trial; no objection was made to the introduction of evidence on such ground; defendant introduced evidence in support of the allegations now claimed to be admitted by the pleadings; it nowhere appears that the attention of the trial court was called to these alleged admissions, and it appears that both parties tried the case as if all the allegations of the cross-complaint were denied. We do not think appellant can be heard here for the first time upon the point raised. (*Klopper v. Levy*, 98 Cal. 525; *Loftus v. Fischer*, 106 Cal. 616.)

3. The point is urged by appellant that there is a fatal vari-

ance between the promise as alleged and as found. The complaint was filed after December 31, 1888. It alleged that the defendant "promised and agreed to pay to plaintiff herein said sum of $1, 859.25 on or before December 31, 1888, as and for its proportionate amount of said loss." The promise as found by the court was as follows: "That said defendant, at the time of the settlement and adjustment aforesaid, promised to pay to said plaintiff herein, and said plaintiff promised and agreed to accept from it, the said sum of $1,859.25 in full settlement of and for defendant's proportionate amount of said loss, such payment to be made to plaintiff within sixty days from the time when formal proofs of loss, prepared in accordance with said settlement and adjustment, should be received by defendant. That such formal proofs of loss were prepared for said plaintiff and presented to said defendant on the 31st day of October, 1888."

The position of appellant is, that the promise alleged is to pay absolutely and unconditionally within a specified time, while the promise found is to pay within a specified time after the happening of another event, to wit, the receipt by defendant of proofs of loss, to be prepared in accordance with the alleged settlement; that in the one case the promise would certainly mature at the expiration of the thirty-first day of December, 1888; in the other it might not mature until after an indefinite period, and possibly never. Appellant cites numerous cases from our reports where variances have been held to be fatal. The Code of Civil Procedure, sections 469, 470, and 471, has prescribed the rules as to variances, and section 475 directs the court to disregard any error or defect in the pleadings and proceedings which does not affect the substantial rights of the parties, and it forbids the reversal of a judgment by reason of such an error.

The complaint alleged a settlement and a promise to pay at a definite time, to wit, December 31, 1888. The finding is to the like effect, with the addition that it stated a condition, to wit, that certain proofs of loss were to be prepared and served, and it was found that they were so served October 31, 1888. In the point as to time when the loss was payable the two dates concur. The pleading and findings concur in the essential fact that a settlement was made, and that there was an agreement to pay. We do not think the omission to plead the fact that payment

was to follow proofs was such a material element as could in any way have misled defendant or deprived it of full preparation to make its defense. The pleading and the finding both identify the transaction which is the basis of the action. Furthermore, the objection comes too late. No objection was made to the evidence, and no motion was made for a nonsuit on this ground at the trial, and plaintiff was deprived of an opportunity to amend The complaint was sufficient to support the judgment as rendered, and so were the findings. There was much evidence introduced by both parties relating to the proofs made of the loss. The rule was stated in this court as early as *Marshall v. Ferguson*, 23 Cal. 66, and has been repeated many times since, and as late as *Horn v. Hamilton*, 89 Cal. 276. (See *Davis v. Baugh*, 59 Cal. 568; *Eversdon v. Mayhew*, 85 Cal. 1; *Yik Hon v. Spring Valley W. W.*, 65 Cal. 619, and cases there cited; Pomeroy's Remedies, sec. 555.)

4. It is claimed that the evidence does not sustain either the promise pleaded or the promise found; and it is claimed that the promise which plaintiff was bound to prove was a several express promise upon the part of defendant. The allegations of the complaint, we think, show, as do also the findings, that the defendant and the other insurers agreed to an adjustment of the entire loss at the sum of $90,000, which they agreed to pay plaintiff in full settlement of the damage, and plaintiff agreed to accept the same, and that as part of the agreement each company or insurer was to pay its proportionate amount of this agreed total sum. The evidence is quite voluminous, and is contained in volumes 2 and 3 of the transcript, comprising over 2,500 folios, and need not here be repeated.

It is urged that at no time prior to the reversal of the original judgment against defendant did plaintiff or its counsel understand that there had been an independent several promise on the part of defendant to pay; that plaintiff's original theory was that a promise resulted, as matter of law, from the rendition and return of the awards. But it is said that this claim was overthrown in the first appeal (*Stockton etc.Works v. Glen's Falls Ins. Co.*, 98 Cal. 557); that the finding of the court upon the first trial was that there was no such promise, and, as there was no evidence of an independent promise upon the second trial,

it must follow that the action here must rest upon an implied promise resulting from the submission to arbitration to pay at the time fixed in the policies.

It was held in the first appeal that, where the cause of action is upon an agreement to pay the loss after it had been ascertained by arbitrators, it is distinct from a cause of action upon the policy; and where the complaint does not state a cause of action on the policy, but upon the promise to pay the appraised loss, a finding that no such promise was made is fatal to a judgment in favor of plaintiff. In the case now here the cause of action is upon the agreement and not upon the policy, and in this second trial the court found in favor of plaintiff on the agreement. The case is here now on a different state of facts and on different findings. If the evidence sustains the findings, and the findings support the promise pleaded, we do not see that the decision in the former case can control this case. Nor do we think that the position taken by plaintiff in the first trial—in some respects inconsistent with that assumed now—should deprive it of the fruits of this action, if the cause of action as now presented is sustained by the evidence and findings.

There is conflict in the evidence as to the agreement upon which plaintiff sues, but we think there is some evidence tending to establish the agreement as found. Appellants appear to have so understood the result of the meeting at San Francisco, and on the sixteenth day after the proofs were filed with the companies they stated the agreement in their pleadings to enjoin plaintiff substantially as it is now found by the court. The evidence is not very clear as to the point that each company separately and independently agreed for itself to pay its proportionate share of the $90,000, but all the facts and the conduct of the parties show that it was so understood and was not questioned until long after the awards were made and the proofs filed, and then only because of alleged discovery of fraud and concealment by plaintiff. We are asked to review the record in the first trial and the findings there made in support of appellant's contention that the evidence there was stronger than now, and yet the trial court found that there was no agreement to pay the loss outside that in the policy. We cannot do this. The law of that case upon like facts must be the law of this case. But the facts of this

case must control the findings, and the court found the facts to be different in the second trial from the facts at the first trial; and by the facts as now found must we be guided.

5. It is claimed by appellant that the contract sued on, conceding that it was made, was an unexecuted parol modification of a written agreement, and hence void. (Citing Civ. Code, sec. 1698; *Thompson v. Gorner*, 104 Cal. 168; 43 Am. St. Rep. 81; *Benson v. Shotwell*, 103 Cal. 167; *Erenberg v. Peters*, 66 Cal. 114.) As we understand the opinion in the first appeal, it was there held that the action, being upon an agreement to pay upon an adjusted claim, is not upon the policy but upon the agreement, and may be maintained. The agreement is founded upon the policy, but it was in its essential elements a substitution of an entirely new contract, so far as it went, and upon a new consideration, to wit, to accept less than the amount of insurance and less than claimed by plaintiff. We cannot see that the fact that the new agreement (which need not be in writing) rested in parol affects the question. All the parties acted upon the new agreement as valid and binding up to the day the money was payable. It was executed on the part of plaintiff and defendant in the matter of having the awards and proofs made in writing, and filed with defendant, and it is practically conceded by defendant that but for the discovery of the alleged fraud and concealments of plaintiff the awards would have been promptly paid. We do not think the point now raised, that the new agreement is void because not reduced to writing, is available to defendant.

6. It is urged that the evidence is insufficient to sustain the findings that the books and memoranda showing cost and value were not concealed, and that plaintiff was not guilty of fraud and that the property destroyed was in value equal to ninety thousand dollars. As to the value the evidence is conflicting, but we think it is sufficient to support the finding. We do not deem it necessary to go into this inquiry, which occupies a large part of the transcript, for from the start plaintiff's and defendant's arbitrators very closely agreed upon the value, and as to the value of the building ($22,360) there never was any disagreement. The question of fraud would seem to demand some notice, as it is the principal defense set up. It turned out at this

trial that the alleged concealed documents were brought to light through the disclosures of one E. P. Palmer, at the time of the fire the plaintiff's bookkeeper, who it was alleged had kept the books and papers out of sight when the adjusters first visited plaintiff's office to ascertain the cost of the property destroyed; and it was claimed that defendant had no knowledge of these documents until after the agreement of October 18, 1888, and would not have made the agreement if it had received such knowledge. There is no evidence of any intentional concealment by any agent of the plaintiff except this one employee, and it appears that he was told by plaintiff to show the agents of the insurance companies everything, and that he acted wholly on his own motion in not doing so, if it be true, which is stoutly denied, that he withheld the books or concealed them.

It was found by the trial court at the first trial that the defendant and the other insurers consented that the arbitrators might find the amount of plaintiff's loss to be $90,000, because of statements made to defendant and the other insurers by plaintiff that there were no books showing cost of construction, value of certain of the insured property, and "that if defendant and plaintiff's other insurers had known of the books in the possession of plaintiff showing cost of construction and value, they would not have given such consent."

In the present case, the court did not find, as before, that the defendant consented that the arbitrators might fix the loss at $90,000, because of statements made to defendant that there were no books showing cost of construction and value; and consistently, because the court found that defendant was furnished the books which at the first trial plaintiff failed to show were exhibited to defendant. But we are not disposed to hold that even under the findings in this case, the rule laid down in the first appeal would be different. We think defendant was entitled to such knowledge as plaintiff possessed, no matter what the motive of defendant was in consenting to the agreement. As we understand the decision in the first appeal, it is immaterial whether the concealed books in fact conveyed such accurate and complete information as would have enabled defendant to ascertain the exact cost of the property. It was entitled to have the information, such as it was; and it seems to us that the only

question now is, Did the defendant have this information before or at the time it agreed to settle and adjust the loss as alleged and found?

Finding 13 is to the effect that the adjusters of defendant and the other insurers demanded of plaintiff an inspection of its books and vouchers showing the cost of construction of the agricultural implements destroyed; "that on said demand being made plaintiff's agent directed one Palmer, its bookkeeper, in whose custody and control all of its books and vouchers then were, to exhibit and present to the adjusters all books of said plaintiff in his possession"; that Palmer then had in his charge "certain books in which were entered lists of materials in and the component parts of certain combined harvesters manufactured by it, and which were damaged or destroyed by said fire, and also estimates made by said bookkeeper of the cost of construction of certain of said combined harvesters"; that plaintiff had no books, papers, etc., "from which could be ascertained the cost of construction or actual value of any property damaged by said fire"; that plaintiff had no books, etc., showing cost of construction or value, except such as are above referred to. The finding then is, that "prior to the time of the appointment of said arbitrators and the presentation of said statement and proof of loss, all of the books containing the matters aforesaid were handed to said adjusters representing the defendant and the other insurers, and were then seen and examined by them."

Finding 14 is that all the insurers "at and prior to August 30, 1888, had been afforded by said plaintiff an inspection and examination and had inspected and examined all books in said plaintiff's possession, or under its control, containing any statement or data or memorandum of cost or estimate of cost of the construction or value of the property damaged or destroyed by fire."

These findings refer to the books and papers alleged to have been withheld by Palmer. The finding that they did not afford information sufficient to enable defendant to ascertain the exact cost or value of the property is immaterial, as was held in the first appeal. Such as they were defendant was entitled to them, and the court found that defendant was furnished them at and prior to August 30, 1888, and prior to the statement and proof

of loss and prior to the appointment of the arbitrators. It was also found by the court that the adjusters informed the arbitrators, Arnold and Neilson, that they, the adjusters, had seen and examined the books, and that there was nothing therein from which could be obtained the cost of construction, and directed the arbitrators to seek their information elsewhere, and it was found that the arbitrators separately investigated the loss and its amount; that the defendant and the other insurers commenced an investigation to ascertain the condition and value of the destroyed property about August 19, 1888, and continued such investigation for several weeks, and did ascertain the true value and cost of replacement of the property, and "that on October 1, 1888, they well knew, and prior thereto had well known, the condition, value, and cost of replacement of all of said property so as aforesaid destroyed by said fire."

It appears from the evidence that the adjusters reached Stockton August 23d, and went at once to plaintiff's office and called on Palmer and asked to see the books. Palmer declined to show them without instructions from the directors. The next day, August 24th, Shippee, the manager of plaintiff company, to whom this matter of attending to the loss had been confided by plaintiff, went with the adjusters and instructed Palmer to show them everything.

It is admitted by defendant in the brief of counsel that there was evidence tending to prove that Palmer did in fact show the insurers the books containing estimates of loss, and that they were fairly examined by them prior to the making of the awards, thus negativing the defense based upon the alleged concealment, and necessarily negativing the various charges of fraud in that connection. But counsel contend that the testimony to the above effect is unworthy of belief, and cannot for that reason sustain the finding resting upon it. The evidence is conflicting —flatly contradictory. We are cited to *Lind v. Closs,* 88 Cal. 6, and *In re Irvine,* 102 Cal. 606, in support of the proposition that a finding will not be sustained upon the positive testimony supporting it, if, in the light of other evidence, it is unworthy of belief. And it is claimed that the challenged evidence is the result of a desire to fit the facts to the law of the case as made by a previous decision. (Citing *Soule v. Dawes,* 14 Cal. 249.)

The cases cited by appellant do not warrant us in holding the case here to be an exception to the universal rule that this court will not disturb the findings where the evidence in their support is conflicting. There is nothing inherently improbable in the evidence of Dorr, nor do we find that he made statements at any time contradictory of his evidence. Some of the evidence is contradicted, and it may be unworthy of belief. But whether so or not, and whether the contradictory evidence was any more reliable than the evidence it controverted, were matters as to which the trial judge was in much better position to determine than we possibly can be. There was evidence on which to base the findings, and they must therefore stand.

As connected with the issue of fraud, it is urged that the findings as to the value of certain machines were not sustained by the evidence. Here, as elsewhere, was much conflict in the evidence, and we cannot say there was none in support of the findings, for there was much. We think there is evidence to sustain the finding that the property destroyed was of greater value than $90,000. Besides, after all parties had reached an agreement as to the entire loss, after much investigation, and the insurers had directed the arbitrators to make up the awards or proofs on the basis of $90,000 for the entire loss, assuming the building to be worth $22,360, it was not very material just what value was attached to any given machine or article insured, except as it might bear upon the question of fraud. The companies were to share the loss in the proportion the policies each held bore to the whole loss, and it was of small consequence whether this or that item was over or undervalued in the awards; and, furthermore, the companies made no complaint of the awards when submitted.

7. The bill of exceptions specifies one hundred and fifty-four alleged erroneous rulings at the trial in admitting and excluding evidence offered. Appellant has thrown them all into seven classes and deals with the classes.

(a) Error is claimed in admitting conversations with Charles W. Dohrman, who had died between the first and second trial, the ground being that he was not the agent of this defendant company. I think the evidence shows quite clearly that Dohrman was acting for all the companies, at least in the adjustment

of the loss after the fire. He was the local agent for several of the companies at Stockton, and to him was presented the proofs of loss by plaintiff, as agent of all the companies; his name is among those of the adjusters signed to their report; his name is attached to the agreement for the submission to arbitration, in which, with others, he assumes to represent all the companies. No specific question or answer is pointed out in appellant's brief as objected to. The objection that Dohrman was not the agent of this particular defendant is not sustained.

(*b*) The witness Palmer, who had been the manager and acting secretary of plaintiff up to the fire, testified, as defendant's witness, that the Shippee harvester machines were unsalable at the time of the fire, and had no value except for the material that was in them. He was then asked by defendant to state his reasons. The court sustained plaintiff's objection to this question. Ordinarily, when a witness testifies to a fact involving an opinion, his reasons are sought by the other side to test the weight of the evidence. We think, however, as the witness was speaking of the value of machines, it was proper for defendant to ask him why he had estimated them to be of no value except for old material, and why they were unsalable; but we cannot say that it was reversible error to exclude the evidence. The court was bound to consider what he testified as to value without his giving any reason for his answer.

(*c*) The court excluded the evidence of defendant as to the operation and value of any machines except those destroyed by the fire. Defendant endeavored to show that the destroyed machines were worthless by showing how other machines of similar pattern built by plaintiff had worked. This evidence was refused upon an objection that the salability or cost of construction or value of one machine cannot be shown by comparison with another. The witness had explained the workings of a machine he had purchased from plaintiff and had returned to plaintiff. Subsequently he got a No. 2 Shippee machine, and he was asked: "Did that machine prove a success or a failure?" The objection was at this point made to the evidence, and the offer of defendant was to show that this machine was similar, in fact identical, with some of the burned machines. Respondent claims that the ruling comes within the case of *Fox v. Stockton etc.*

*Works,* 83 Cal. 333.  (Citing, also, *Murray v. Brooks,* 41 Iowa, 45.)  Appellant contends that there was no other way to prove the inefficiency of the machines that were destroyed than by proof of the failure of tested machines of similar or identical pattern.  We do not see that because the machines in question were burned would change the reason for the rule laid down in *Fox v. Stockton etc. Works, supra.*  The comparison by the method proposed would be the same whether the rejected machine was in a pile of junk or standing in the field unused, or had been totally destroyed.  We think the ruling was correct.

(*d*) Defendant objected to certain evidence offered by plaintiff, and admitted to show that the Shippee machines had a value in excess of the award, because if a person could not get a superior machine the Shippee machine would be a good investment upon such valuation.  We do not find upon examining the folios pointed out that the witnesses made their estimates of value upon the contingency that a superior machine was not available.

(*e*) Some objections were made by plaintiff, and sustained by the court, to the questions of defendant relating to the market value of the machines at the time of the fire.  Examination of the record shows that the questions were objected to as not proper on cross-examination, and we cannot see that the court erred in its ruling.  We have examined the record where the other alleged errors are to be found, and discover no reversible ruling of the trial court.

8. It is contended that the decision is against law.  The point rests upon the contention that certain allegations of the cross-complaint were not denied by plaintiff, although it is conceded that the court found against defendant in respect of all these averments.

We think that some of the allegations now claimed not to have been denied were clearly denied; others, by affirmative allegations of the plaintiff inconsistent with them.  As to all these allegations the parties submitted evidence *pro* and *con.*  The trial was conducted as though full denials were made.  The point now made cannot be heard here for the first time.  (*Klopper v. Levy, supra.*)  The cause has been ably and exhaustively presented by counsel on both sides of the controversy.  We have endeavored

to consider and pass upon the salient and essential questions of law and fact called to our attention. Conscious that, in so extended a record, the difficulty in determining the exact relation of all the facts and their legal bearing upon the issues is very great, we yet believe there was evidence justifying the findings and decision of the trial court, and therefore recommend that the judgment and order be affirmed.

Belcher, C., and Searls, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Fleet, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.