HOUSE v. FILGO et ux.

(Court of Civil Appeals of Texas. Dallas. Jan. 17, 1914. Rehearing Denied Feb. 14, 1914.)

1. APPEAL AND ERROR (§ 981*)—DISCRETION OF TRIAL COURT—MOTION FOR NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

A motion for new trial for newly discovered evidence is generally addressed to the trial judge's sound discretion, whether the trial be by a jury, and his action thereon will not be reviewed unless it affirmatively appears that he has abused such discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3876; Dec. Dig. § 981.*]

2. NEW TRIAL (§ 99*)—NEWLY DISCOVERED EVIDENCE—DISCRETION OF COURT—TRIAL BY COURT.

Where the trial was by the judge without a jury, the court had more latitude in considering a new trial for newly discovered evidence than it would have had in a jury case.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 201, 207; Dec. Dig. § 99.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

3. NEW TRIAL (§ 108*)—DISCRETION OF TRIAL COURT—NEWLY DISCOVERED EVIDENCE.

In an action for the conversion of a vendor's lien note which defendant claimed had been assigned to him to secure the payment of a debt, it was not an abuse of discretion to deny a motion for new trial for newly discovered evidence that plaintiff confessed that he assigned the note to defendant for the purpose stated, where it did not appear that the alleged newly discovered evidence would have produced a different result.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 226, 227; Dec. Dig. § 108.*]

Error from District Court, Dallas County; Kenneth Foree, Judge.

Action by Henry Filgo and wife against Ellis P. House. Judgment for plaintiffs, and defendant brings error. Affirmed.

Wm. J. Berne, of Ft. Worth, for plaintiff in error. Whitehurst & Donalson, of Dallas, for defendants in error.

RASBURY, J. Defendants in error sued plaintiff in error to recover a vendor's lien note for $829.58, alleging conversion by plaintiff in error. John G. Wilson, who held the note pending the dispute between plaintiff in error and defendants in error, was made a party defendant. Plaintiff in error denied the conversion and by special plea alleged that the note had been assigned to him by defendants in error to secure payment of a debt of $750 due him by the defendant in error Henry Filgo. This plea was followed by prayer for appropriate protection in that behalf. A jury was waived, and trial was had before the judge, who found the title of the note to be in defendants in error, and enjoined plaintiff in error and Wilson from interfering with the title and possession thereof.

After judgment plaintiff in error discovered evidence alleged to have been unknown to him at the time of the trial, because of which he sought another trial, and the refusal of the court to grant him a new trial on that ground is the sole error assigned upon this appeal. For a correct understanding of the issue it is necessary to state that upon trial defendants in error proved, by facts sufficient to sustain the judgment, that, prior to the transaction herein detailed, they sold their homestead in Dallas county to W. G. Biggett, agent, taking his notes therefor, one being the note in controversy, which was secured by the vendor's lien on the land conveyed. After the sale of the land defendant in error Lucinda Filgo sued defendant in error Henry Filgo, her husband, for divorce; her attorney being plaintiff in error. In the divorce suit injunction was issued against defendant in error Henry Filgo restraining him from disposing of the community assets of himself and wife, and, at the time of the service of the writ, Filgo delivered the note in controversy to plaintiff in error, with the understanding that he would produce same upon trial of the divorce case. The divorce suit was to be tried May 25, 1912, but prior thereto same was dismissed upon demand of defendant in error Lucinda Filgo. Lucinda Filgo paid plaintiff in error $250 in payment of plaintiff in error's professional services in the divorce case. About the time Lucinda Filgo dismissed her suit for divorce, plaintiff in error, on the ground that it was necessary to protect Lucinda, procured defendant in error Henry Filgo to indorse the note in controversy to his wife as part of her share of the community estate. Defendant in error Henry Filgo did indorse and deliver the note to his wife. Plaintiff in error then induced Lucinda Filgo to indorse her name on the note, advising her such course was necessary in order for her to receive the benefit of the assignment to her, which she believed and relied upon. She did not intend by her indorsement to convey any right or interest in the note to plaintiff in error.

Plaintiff in error upon trial proved by facts sufficient to have sustained a judgment in his favor, had it been rendered, that defendants in error were indebted to him in the amount of $800, less certain immaterial credits which were due under a contract by which defendants in error employed plaintiff in error to defend one Bud Simpson, defendant in error, Lucinda Filgo's brother, who was charged in one indictment with aggravated assault and in another with first degree murder. On the day the assault case was set for trial, plaintiff in error accepted the note of defendant in error Henry Filgo and Monroe and Clark Simpson, for $50, in payment of his fee in the assault charge against Bud Simpson. Afterwards plaintiff in error, in company with defendant in error Henry Filgo, Monroe and Clark Simpson, visited Bud Simpson at the jail, and after some negotiations pro and con it was finally agreed that plaintiff in error should be paid $750 to defend Bud Simpson on the murder charge, $250 to be paid January 1, 1912, represented by the note of defendant in error Henry Filgo, and $500 to be paid at trial of the case; Filgo stating at the time that he was about to sell some land in Tarrant county, from which source he could secure the $750. After this transaction defendant in error Lucinda Filgo employed plaintiff in error to file the divorce suit against her husband, Henry Filgo. Suit was filed, injunction issued, and the note in controversy delivered to plaintiff in error substantially in the manner claimed by defendants in error. Pending settlement of the divorce suit, Henry Filgo asked plaintiff in error to assist him in adjusting matters between him and his wife. Plaintiff in error declined to do so and suggested that he employ an attorney to represent him in the matter, which he did. Plaintiff in error and the attorney for Henry Filgo, after some parleying, agreed on a set-

tlement of the divorce case. Filgo promised the land notes to his wife, and indorsed one of them to her. While the defendants in error were at the office of plaintiff in error closing up the divorce suit, he told them he would not represent Bud Simpson any longer, unless his fee was secured, since they had not paid the $250 note, and he had been compelled to sue upon it. Plaintiff in error advised them they could either release him from his agreement to represent Simpson or secure his fee by assigning the note in controversy. Defendants in error finally agreed to assign the note to plaintiff in error, which they did. This took place on Thursday. The following Saturday defendants in error attempted to repudiate the transaction. Plaintiff in error represented Simpson on trial for murder, of which he was found guilty, and at the time of trial had just returned from Austin, where he had presented his case to the Court of Criminal Appeals on appeal from his conviction.

Bud Simpson testified upon trial, in effect, that he was depending upon defendant in error Henry Filgo to secure him an attorney, and that, after he failed to secure the attorney they first had in mind, he did secure plaintiff in error, but that he was not familiar with the details of same. At the time he testified he had been tried on the murder charge, found guilty, and sentenced to the penitentiary for 30 years.

After the trial the following facts were shown on motion for new trial by affidavit: Bud Simpson swore that after trial Henry Filgo called on him and mentioned that he defeated House in the suit. Filgo said he "hated" to have the suit with House over Simpson's case, because it was not his intention to beat House out of the fee when he employed him, but that he had expected Clark and Monroe Simpson (brothers of Bud) to pay their part, which they refused to do, and that he was forced to either pay it all or beat House out of it. Filgo further said that, having given his land note to House, he was compelled to pay it all or beat it all, since House had refused to accept his part of the fee. Filgo also told Simpson that he had secured him another attorney to look after his case.

Judge Mike E. Smith, of Ft. Worth, swore that in the spring of 1912 a negro called upon him to employ him to file a suit to clear some land of a judgment held by a lawyer in Dallas, named House, who the negro said he had employed to defend his brother in law against a charge of murder. He referred the negro to W. J. Van Dorn.

W. J. Van Dorn swore that for two years preceeding November 1, 1912, he practiced law in Ft. Worth, having an office with Judge Mike E. Smith. Late in the afternoon of the day in which the instant case was tried, he was introduced to plaintiff in error. He told plaintiff in error he had heard him trying the case and knew Filgo, who at the time had been referred to him by Judge Mike E. Smith in reference to engaging Van Dorn's services. House asked him for the details of what took place between him and Filgo, which he promised to furnish upon consulting his office files. He consulted his files and found that Filgo consulted him May 25, 1912, in reference to a judgment which House had abstracted in Tarrant county at that time against Filgo for $309.37, and which ran against Filgo, Clark, Monroe, and Bud Simpson. He agreed to represent Filgo, who wanted him to go to Dallas that day and see House. Filgo stated at the time that he had employed House to defend his wife's brother, agreeing to pay him a fee of $750, and as part payment had signed a note for $250, together with Clark, Monroe, and Bud Simpson, the balance of $500 to be paid at trial, and that House had sued on the $250 note. Filgo also said that, to secure payment of the fee, he had assigned House the note in controversy, but that House would not release the judgment lien filed in Tarrant county until Filgo paid the Simpson fee in full.

Henry Filgo, by affidavit, denied the truth of the facts stated in the Smith and Van Dorn affidavits, and inferentially denied the facts sworn to by Bud Simpson.

[1] Did the court err in refusing the plaintiff in error a new trial on the ground of newly discovered evidence? We think not. A motion for a new trial on the ground of newly discovered evidence is, as a rule, addressed to the sound discretion of the trial judge, both in trials by jury or before the court, and the action of the trial judge will not be reviewed unless it affirmatively appears he has abused such discretion. Daugherty v. Templeton, 50 Tex. Civ. App. 308, 110 S. W. 556; San Antonio Gas Co. v. Singleton, 24 Tex. Civ. App. 341, 59 S. W. 920. In the case last cited it was said: "'It is incumbent on a party who asks a new trial on the ground of newly discovered evidence to satisfy the court: First, that the evidence has come to his knowledge since the trial; second, that it was not owing to the want of due diligence that it did not come sooner; third, that it is not cumulative; fourth, that it is so material that it would probably produce a different verdict if a new trial were granted.' Hatchett v. Conner, 30 Tex. 104; Railway Co. v. Forsyth, 49 Tex. 171. Whether the motion for a new trial met the above conditions was one largely addressed to the discretion of the trial judge. 'It is impossible to prescribe rules which shall afford a certain guide for the determination of every case; and, where the law does not furnish a rule, the application must of necessity be addressed to the discretion of the presiding judge. Having presided at the trial, having seen the witnesses and heard them testify, his means of judging of the correctness of the verdict and the propriety of granting a

new trial are superior to those afforded the appellate court by a mere statement of the evidence in the record. Hence, in revising the judgment of the district court refusing a new trial, it has been the uniform practice of this court not to reverse the judgment, unless it clearly appears that the party applying has brought his application within those rules which entitle him to a new trial as a matter of law. The inquiry has been, not whether, upon the evidence in the record, it apparently might have been proper to grant the application in the particular case, but whether the refusal of it has involved the violation of a clear legal right or a manifest abuse of judicial discretion.' Ables v. Donley, 8 Tex. 331; Railway Co. v. Marcelles, 59 Tex. 334."

[2] As applied to the instant case, the rules just quoted are particularly pertinent, since upon trial of the case both sides waived jury trial and requested the trial judge to occupy the dual post of judge and jury, and in considering the application for a new trial the court, beyond doubt, was freer to consider the application from every angle than he would have been in a trial by jury. Occupying such attitude, and having upon him at trial the duty not only of determining the admissibility of the evidence but as well the credibility of the witnesses, and the weight to be given their testimony, an analysis of the testimony does not, in our opinion, bring the case within either the third or fourth rule stated.

[3] If we consider the affidavit of Bud Simpson (which is objected to on the ground that he is a' convict, his case having been affirmed, and hence not to be considered, but which point we do not determine), it can do no more than admit in testimony the fact that Filgo confessed that he did assign the note to House in order to secure the payment of the fee that went to pay his attorney for defending him for murder, and which, for obvious reasons, he was deeply interested in. Aside from that fact, there remains the other facts and circumstances and the testimony of the other witnesses directly and inferentially supporting defendants in error's theory, which cannot be disregarded, and because of which it may not be said that such testimony would probably produce a different verdict upon another trial.

What we have said in reference to the Bud Simpson affidavit applies with equal force to the Van Dorn affidavit. To hold that either was sufficient upon which to set aside the judgment of the court would be finally to say that, from the maze of contradictory facts and circumstances adduced upon trial of the case, we are inclined to accept as true those testified to by one side of the controversy, notwithstanding there was sufficient testimony adduced by either side to have sustained a verdict in their favor. Such a

condition but accentuates the wisdom and fairness of the rule which permits appellate courts to depend upon the sound discretion of the trial judge in such cases, for the very good reasons stated in the Singleton Case, supra.

The judgment is affirmed.