FEAGINS et al. v. TEXAS MACHINERY & SUPPLY CO. (No. 7457.) *

(Court of Civil Appeals of Texas. Dallas. March 18, 1916. On Rehearing, May 13, 1916.)

1. EVIDENCE ⬤⟿131 — RELEVANCY — SIMILAR FACTS.

In an action on notes given in payment of an engine, where one of the issues raised by defendants' pleading and evidence was that the engine had failed to develop sufficient power to operate the gin outfit at the necessary speed to properly separate the lint from the seed as guaranteed by plaintiff, evidence in rebuttal of defendants' evidence in support of such issue that a witness had a gin plant substantially the same as that of defendants,' constructed by the same factory, and operating the same type of engine sold to the defendants, and that such engine had for three years furnished satisfactory power for operating his gin plant, in view of the similarity in all essential particulars, was admissible, subject to the court's discretion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 399–402; Dec. Dig. ⬤⟿131.]

2. SALES ⬤⟿181(5) — EVIDENCE—RELEVANCY.

In such action testimony of a farmer who had two bales of cotton ginned by defendants as to what kind of a turnout he got from those bales of cotton, to show that the turnout was poor, in that the quality of lint was not what it should have been, and resulted from the failure of the engine to furnish sufficient power to speed the gin, in connection with testimony that speed in operating gins produces a greater quantity of lint and that speed or lack of speed would not alone cause a poor turnout in the quantity of lint but that the condition of the cotton and the soil on which it was grown contributed to that result was inadmissible as the inference would be only that the gin was run at too slow a speed and not that it did not have power to run at a greater speed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 480; Dec. Dig. ⬤⟿181(5).]

3. EVIDENCE ⬤⟿317(10) — HEARSAY — POWER OF ENGINE.

In such action testimony of a witness who was operating a competing gin that defendants' former customers told him that they brought their cotton to his gin because they got a poor turnout at defendants' gin, due to the insufficient power of the engine, was hearsay and properly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1183; Dec. Dig. ⬤⟿317(10).]

4. EVIDENCE ⬤⟿242(1)—ACTION FOR PRICE— ADMISSIONS OF AGENT.

In such action, where defendants' bookkeeper was one of those elected by defendant to be present when the engine was tested to observe the amount of fuel consumed to determine whether plaintiff was within its guaranty as to cost, and where he was present, his statement in writing, as a part of the report of the others present, that the fuel consumed by the engine was less than that guaranteed in the contract, was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 893; Dec. Dig. ⬤⟿242(1).]

5. TRIAL ⬤⟿352(4)—ACTION FOR PRICE—SPECIAL ISSUES.

In an action on notes given for the price of an engine sold for use in defendants' cotton gin, where defendants set up that the engine never performed as guaranteed by the contract and as claimed by plaintiff, that plaintiff agreed to disregard the former test and to thereafter test the engine, at which time it failed to develop the power guaranteed, and where plaintiff denied the making of any new contract or a surrender of any rights under the original contract or test, but admitted the single demonstration after the original test in order to satisfy defendants, and where there was evidence in support of the pleading and the reply, the submission of an issue as to whether the later test was merely a demonstration in an effort to settle the differences arising out of the contract was proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 840; Dec. Dig. ⬤⟿352(4).]

6. SALES ⬤⟿441(3)—ACTION FOR PRICE—GUARANTY—SUFFICIENCY OF EVIDENCE.

Evidence in an action on notes given for an engine sold the defendants for use in its cotton gin *held* to sustain the finding that the engine could operate the gin as guaranteed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1279, 1280; Dec. Dig. ⬤⟿441(3).]

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. APPEAL AND ERROR** ⊜⇒750(4) — QUESTION OF FACT—REVIEW.

An assignment that there was no evidence in the record to sustain a finding of the jury requires the Court of Civil Appeals to examine the evidence and determine whether there is contained therein testimony which will support the verdict and judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3079; Dec. Dig. ⊜⇒750(4).]

**8. APPEAL AND ERROR** ⊜⇒981 — NEW TRIAL ⊜⇒99—DISCRETION OF TRIAL COURT—MOTION FOR NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

A motion for a new trial on the ground of newly discovered evidence is addressed to the trial judge's sound discretion, and his action thereon will not be reviewed, unless it affirmatively appears that he has abused such discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3876; Dec. Dig. ⊜⇒981; New Trial, Cent. Dig. §§ 201, 207; Dec. Dig. ⊜⇒99.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the Texas Machinery & Supply Company against N. B. Feagins and others. Judgment for plaintiff, and defendants appeal. Affirmed.

John H. Sharp, of Ennis, and Crane & Crane, of Dallas, for appellants. Hiram F. Lively and Burgess, Burgess, Germany & Chrestman, all of Dallas, for appellee.

RASBURY, J. Appellee sued appellants upon two promissory notes aggregating $2,-294.25, executed by appellants and payable to appellee, seeking judgment for the principal, interest, attorney's fees, and foreclosure of lien upon an engine in payment of which the notes were given. Appellants admitted execution of the notes and the lien, but alleged that the consideration therefor had failed. In connection with such plea it was alleged that the engine was guaranteed to be of good material, to furnish sufficient power to operate a four 70 saw Continental cotton gin plant in a steady and reliable manner, so that the saws used in the gins would maintain a specified and necessary speed, and at a specified cost, in consideration of which appellants, in addition to executing the notes, paid appellee $764.75 in cash and $200.20 on freight when the engine was installed, upon the fraudulent representation by appellee that the engine had been tested and would do its guaranteed work. Appellants also alleged, in effect, that the engine failed to do the work it was guaranteed to do, and that after the engine failed so to perform its work a new contract was entered into between the parties in which it was agreed that the engine would be tested anew, and, if it failed to perform, the notes would be canceled and all payments refunded, and that it did on the last test fail to meet the guaranty. Prayer was that the notes and lien be canceled and appellants recover the cash items paid. Appellee, in response, to appellants' pleading, averred that the engine had been tested and unconditionally accepted by appellants under the provisions of a contract between the parties, and denied the making of the new contract, as well as the other affirmative matter pleaded by appellants. There was trial by jury, to whom the court referred for their determination special issues of fact. Upon the findings of the jury judgment was for appellee. Hence this appeal.

The sale of the engine to appellants and the execution of the notes originated in a written contract and specifications between the parties. The contract and specifications are not in dispute, but it is necessary to an intelligent understanding of the issues that their salient and material provisions be stated. By the contract, which is dated July 12, 1912, appellee sold appellants, at an agreed price, an engine known as horizontal type N 60 brake horse power, designed for cotton gin service, to be delivered, erected, and tested in appellants' plant in Alsdorf under the superintendence of a competent engineer furnished by appellee at the expense of appellants. The engine was guaranteed to be of good workmanship and material, and when properly installed to furnish needed, steady, reliable power for operating a four 70 saw Continental cotton gin plant to normal capacity at a specified operating fuel expense, using either gasoline, kerosene, or distilled oil as fuel. After test, not to exceed five days, appellants, if the engine performed according to guaranty, were to give appellee unconditional written acceptance of same. Notes, being the ones sued on, were to be executed, secured by lien upon the engine. The contract also recited that it covered all matters relating to the sale and excluded any oral changes or modifications thereof.

The engine was installed September 14, 1912, but for reasons unnecessary to enumerate could not be tested at that time. On September 28, 1912, however, the agreed test was made at which time appellants signed and addressed to appellee a memorandum stating:

"Mr. J. S. Curtis, erecting engineer, has properly installed and tested the machinery covered by the contract between Texas Machinery & Supply Company and Feagins & Atwood, dated July 5, 1912, and has demonstrated that said machinery is in accordance with and has operated according to the specifications and guaranty set forth in said contract, and is now operating successfully and is accepted."

In addition to the foregoing appellants introduced testimony tending to support the allegations of the defense, and the appellee introduced testimony tending to dispute such allegations. The evidence so introduced was sufficient to have supported a finding of the jury either way.

[1] The first assignment of error challenges the action of the court in admitting testimony. Appellee, in rebuttal of the evidence

introduced by appellants in support of their defensive matter, offered E. S. Brack as a witness, who testified, in substance, that he had had an experience of fifteen years in ginning cotton, and had for four years been conducting a gin on the line of Hunt and Delta counties. He further testified that his gin plant was substantially the same as that of appellants in reference to the number of stands, size and number of saws, and other details, and was constructed by the same factory that constructed appellants' outfit, and that he operated same with the same type of engine that was sold to appellants and manufactured by the same concern. He then testified that said engine had for three years furnished satisfactory power for operating his gin plant. One of the issues raised by appellants in their pleading and evidence was that the engine sold them failed to develop power sufficient to operate the gin outfit at the necessary speed to properly separate the lint from the seed. The contention, presented from several angles, is that in rebuttal of such defense it is improper to admit proof that another engine, identical in all respects and a product of the same factory, did, at another place, furnish sufficient power to operate a plant substantially similar in all respects to the plant of the one for which it was claimed it was insufficient. The character of evidence here objected to has been much inveighed against by the courts and text-writers, and cannot be said to be regarded by either favorably, and yet the sum of the discussion may be said to be that it is admissible at the discretion of the trial judge, subject to review in case of abuse. 17 Cyc. 274, 276, pars. 1, 2. The same authority states the rule as to the relevancy of similar occurrences to be:

"That a fact existed or event occurred at a particular time cannot be shown by evidence that another fact existed or event occurred at another time unless the two facts or occurrences are connected in some special way, indicating a relevancy beyond mere similarity in certain particulars. Such relevancy is found where similarity in all essential particulars is shown to exist. Evidence of other facts or occurrences are then admitted, provided the court deems this course a wise exercise of its administrative discretion." 17 Cyc. 283, 284.

On the precise issue in the instant case other jurisdictions have held the testimony inadmissible. Lander v. Sheehan, 32 Mont. 25, 79 Pac. 406; Fox v. Harvester Works, 83 Cal. 333, 23 Pac. 297; Stockton v. Glen Falls Ins. Co., 121 Cal. 167, 53 Pac. 565; Murray v. Brooks, 41 Iowa, 47. The tendency in this jurisdiction is in the opposite direction. Southern, etc., Engine Co. v. Adams et al., 169 S. W. 1143. The purport of the case last cited is that within limitations the evidence is admissible. The fact that the limitations are narrow makes the evidence none the less admissible when within the limitations. We have recited the substance of the evidence, and it occurs to us that the surroundings and conditions under which the engine was tested as to its power were similar, as said in the rule in Cyc., "in all essential particulars," and, being so, was proper occasion for the trial court to "exercise its administrative discretion" and admit the evidence for whatever probative value it possessed. The only difference in surroundings and conditions was the fact that one plant was in Ellis county and the other on the border line of Hunt and Delta counties, which fact was obviously not an essential particular. For the reasons stated, we are constrained to overrule the assignment.

[2] The next assignment complains of the exclusion of testimony. The witness Boren testified that he was a farmer, and that during the year 1912, when appellants' gin was being operated by the engine sold by appellee, he had two bales of cotton ginned by appellants, whereupon counsel for appellants inquired: "Tell the jury what kind of a turnout you got from those bales of cotton." Upon objection the witness was not permitted to answer the question. Appellants expected to prove by the witness that the turnout was poor, in that the quantity of lint was not what it should have been, and that it resulted from the failure of the engine to furnish sufficient power to speed the gins. The contention, in effect, is that it was competent to prove insufficient power in the engine by a poor turnout in the quantity of the lint. And in such connection there was testimony that speed in operating gins produces greater quantity of lint. Whether the engine had, in fact, the guaranteed horse power was a material issue, and any testimony tending to establish that issue was admissible. But would proof of a poor turnout have tended to prove that the engine did not, in fact, possess the guaranteed horse power? We conclude not. The fact deducible from the evidence tendered is that insufficient lint was produced, and that result was due to the fact that the gins were run at too slow a speed. Not that the engine did not have power to run at a greater speed. Thus the expected statement of the witness in the last analysis did not tend to prove the material fact in issue, since it did not appear that the witness had any actual knowledge of the power of the engine or that the engine was running at full power when his cotton was ginned. Further, it was in evidence without dispute by witnesses from both sides that speed or lack of it would not alone procure a poor turnout in quantity of lint, but that the condition of the cotton and the soil upon which it is grown sometimes contributed to the result. Hence the statement that it resulted from an inherent lack of power in the engine, in view of the several causes that may have contributed to the result, was a conclusion of the witness.

[3] The next assignment also complains of the exclusion of testimony. Appellants offered to prove by the witness Davis, who was

operating a competing gin, that certain former customers of appellants brought their cotton to the competing gin and stated to Davis that the reason they did so was because they got a poor turnout, due to the insufficient power of the engine. The proffered testimony was excluded, and the court's action in that respect is challenged. The witness did not profess any knowledge of the matters sought to be elicited. They were imparted to him by others, and he sought only to repeat their statements. Hence the evidence was hearsay, and as a consequence properly excluded.

[4] At trial the court admitted in evidence the following:

"Alsdorf, Tex., 9/2/12.

"Tex. Mach. & Supply Co., Dallas, Texas.— Gentlemen: The 60 H. P. Fairbanks-Morse engine ran to-day using as fuel three parts distillate to one of headlight oil. The temperature was kept at 135 deg. by closing the valve on the pump suction line. The cooling town is O. K.　　　　　F. S. Allen, Engineer.
"The fuel consumed by the above engine was less than that guaranteed in the contract.
"J. E. Dodson, Bookkeeper.
"The speed of the stands and the fan was O. K.　　　　　M. H. Preddy, Ginner."

This statement was secured by appellee's agent, Curtis, at the time the engine was tested under the written agreement, and those signing, according to the testimony of Curtis, were the chosen representatives of appellants present at that time, Allen as engineer, Preddy as ginner, and Dodson, the bookkeeper, to see that appellee's agent came within the limit specified in the contract as to the consumption of fuel. To that portion of the statement signed by Dodson appellants objected in the court below, and it is urged here that it was inadmissible because an unsworn ex parte statement of Dodson and hearsay as to appellants. We conclude the statement was admissible. It is practically undisputed that Dodson was one of those selected by appellants to be present when the engine was tested, his particular duty being to observe the amount of fuel consumed in order to determine whether appellee was within the limitations of its guaranty, and that he was present in such capacity with the knowledge and consent of appellants, and made the record or statement in his representative capacity as a part of the report of the others present in other capacities and concerning which no objection is made.

[5] The next assignment complains of the action of the court in submitting to the jury special issue 4a, which inquired whether the test of the engine made in October or November, 1913, was merely a demonstration of the same in an effort to compromise and settle the differences of the parties arising out of their contract, etc.

Among other defensive matter urged by appellants was the claim that the engine never did perform as guaranteed by the contract, though appellee claimed that it did, and that in July, 1913, they approached appellee for an adjustment of their differences, at which time appellee agreed, on the ground that it desired friendly relations and satisfied customers, to treat the contract as of that date, and thereafter demonstrate the efficiency of the engine, disregarding the former test, and did thereafter test same, at which time it failed to operate the plant as guaranteed, because of insufficient power, immediately after which appellants notified appellee in writing to repossess itself of the engine which it refused to do, etc. Appellee, in response to such plea, denied the making of any new contract or receding from its rights under the original contract or the test held thereunder. Appellee admitted making a simple demonstration of the engine after the original test for the purpose of satisfying appellants, and alleged that at that time the engine met the guaranty in all respects. Such is the pleading of the parties on the point under discussion. We have examined the statement of facts, and it contains evidence offered by appellants in support of their plea, contradiction of such evidence by witnesses for appellee, and evidence in support of the appellee's claim as to the true purpose of the demonstration or test under discussion. For the reason that no purpose will thereby be served, we do not include the evidence in this opinion. There being no other objection to the special issue save that it is not supported by the pleading or the evidence, and it appearing as matter of fact that it is so supported, it becomes our duty to overrule the assignment.

[6, 7] The seventh and eighth assignments, in effect, raise the issue that there is no evidence in the record to sustain the finding of the jury that the engine sold appellants could efficiently operate the gin stands it was guaranteed to so operate. The effect of such an assignment, it has been repeatedly held, is to require this court to examine the evidence and determine whether there is contained therein testimony which will support the verdict and judgment. We have carefully considered the evidence bearing upon the issue so raised, and have reached the conclusion that there is evidence sufficient to sustain the verdict and judgment. We might in deference to counsel collate and analyze the evidence in support of our conclusion, but to do so would conserve no useful purpose, since our duty is to reach a conclusion from an inspection of the evidence as distinguished from a statement of the evidence itself.

[8] It is next urged that the court erred in refusing to grant appellants a new trial on the ground that they discovered after trial that the evidence of Brack, witness for appellee, was false. This witness, as will be seen from our discussion of the first issue in the case, testified, in substance, that he was an experienced ginner, and that for four years he had been conducting a gin substantially similar to appellants, and that his engine, which was the same type of engine

sold appellants and a product of the same factory, furnished satisfactory power, etc. In support of the motion on the ground stated was the affidavit of R. L. Cornelius, of Hunt county, who deposed that he heard Brack say that he discarded the gas engines in his gin because "they would not pull four gin stands each fast enough to gin much cotton," and the affidavit of E. E. Looney, of Hunt county, who deposed, in effect, that the gasoline engines operated by Brack in his gin never gave satisfaction, and that his gin lost customers during 1912 and 1913 because of delay caused by same, and in 1913 he discarded said engines and installed steam engines so as to hold his patronage, and that affiant, a patron of said gin for 14 years, having ginned there sometimes as many as 192 bales of cotton, would have been forced to go elsewhere if better power had not been installed. The issue thus raised is, in effect, a request for a new trial on the ground of newly discovered evidence, since proof of any false statement by Brack could have been offered upon trial had its alleged falsity been known. Under the rule stated in House v. Filgo et al., 163 S. W. 373, we conclude the action of the court in the respect stated is not error.

We have considered the eighth and tenth assignments of error, and, because we are of opinion that they fail to show reversible error, they are overruled.

The judgment is affirmed.

### On Rehearing.

We have carefully considered the motion for rehearing in this case, and conclude we should adhere to our original decision in the matter. The testimony of the witness Brack was, we believe, in view of the pleading, admissible and supported by the authority cited, and in further support of which we cite Wilson v. Avery Co., 182 S. W. 884.

The motion for rehearing is accordingly overruled.