WHITE v. BELL et ux. (No. 8677.)

(Court of Civil Appeals of Texas. Dallas. May 6, 1922. Rehearing Denied June 17, 1922.)

1. Witnesses ☐414(2)—Original tax rendition sheets held admissible to show that person who rendered land as owner considered himself as such.

In purchaser's action to have deed purporting on its face to reconvey the property to vendor to be declared an agreement extending vendor's lien notes on the ground that the purchaser executed the instrument with the understanding that such was its true character, and in which the vendor claimed that the purchaser did not claim the land after the execution of such instrument until a discovery of oil in the vicinity, original tax rendition sheets, duly sworn to by purchaser, constituting a part of the records of the tax assessor's office, show that purchaser had rendered the land as the owner thereof during years subsequent to the

execution of such instrument, held admissible under Vernon's Sayles' Ann. Civ. St. 1914, art. 3694, to corroborate purchaser's testimony that the instrument had been represented to him as a note extension agreement, and that he supposed himself to continue to be the owner.

2. Trial ☐56—Original rendition sheets admissible in discretion of court, notwithstanding admission of adverse party that such renditions had been made.

In purchaser's action to have an instrument purporting on its face to reconvey land to vendor to be declared an agreement extending vendor's lien notes on the ground that he executed the instrument with the understanding that he was procuring an extension of such notes, and was ignorant of the character thereof, the mere fact that vendor had admitted that purchaser during the years subsequent to the execution of such instrument had rendered the land as owner did not preclude the purchaser from introducing in evidence the original rendition sheets to corroborate his testimony that, subsequent to the execution of such instrument, he considered himself the owner of such land as against the contention that such evidence was cumulative, the introduction of such evidence being within the sound discretion of the court in view of the greater probative value of such evidence.

3. Acknowledgment ☐61—In action to have deed declared vendor's lien note extension agreement, testimony as to reputation of officer who certified to acknowledgment inadmissible.

In purchaser's action to have deed purporting to reconvey property to vendor declared an agreement extending the vendor's lien notes, in which there was no attack upon the reputation and character of the officer who took the certificate of acknowledgment of purchasers and had witnessed the deed, but it was only charged that he did not explain the character of the instrument to a married woman, or privately examine her apart, testimony as to his reputation as to interest and fair dealings, was not admissible.

4. Appeal and error ☐499(3)—Bills of exception complaining of exclusion of evidence without stating character of objection insufficient.

Bills of exception, stating merely that certain questions were objected to, and that the objections were sustained, without stating the character of the objection, held insufficient.

5. Deeds ☐78 — Whether purchaser signed deed of reconveyance with understanding that it was vendor's lien note extension agreement held for jury.

In purchaser's action to have deed purporting to reconvey land to vendor declared an agreement extending the vendor's lien notes on the ground that he executed the instrument with the understanding that he was procuring an extension of such notes, and that he signed without knowledge of its true character, evidence held sufficient for the submission of such issue to the jury.

**6. Appeal and error ⊚⇒1001(2)—Verdict authorized by evidence not disturbed though different conclusion could have been reached.**

Where evidence was sufficient to authorize a verdict, the Court of Civil Appeals will not disturb the verdict though it could have arrived at a different conclusion.

**7. Appeal and error ⊚⇒930(3)—Court presumed to have found issues for plaintiffs in support of judgment for them.**

In purchaser's action to have instrument purporting to reconvey land to vendor declared an agreement extending vendor's lien notes on the ground that he executed the instrument with the understanding that such was its true character, in which the questions of whether a vendor had a right to rescind the conveyance and as to whether in fact he had rescinded it were not submitted to the jury, and the court did not request it to submit such issues to the jury, and in which the evidence was sufficient to sustain a finding adverse to the vendor of such issues, it will be presumed in support of judgment for the purchaser that the trial court determined such issues in favor of the purchaser.

**8. Appeal and error ⊚⇒1062(1)—Submission of issue held harmless in view of finding of other issue.**

In purchaser's action to have instrument purporting to reconvey land to vendor declared an agreement extending the vendor's lien notes on the ground that he executed the instrument with the understanding that he was procuring an extension of such notes, the submission of issues as to the understanding of the purchaser's wife. as to the nature of the instrument, and in joining the purchaser in the execution thereof, if error, was harmless, in view of finding on other issue that the purchaser understood he was executing a vendor's lien note extension agreement.

**9. Trial ⊚⇒261—Refusal of special charge embracing six different requested instructions combined in one held proper where two of them were not applicable.**

Where issues comprised in requested charge upon one piece of paper, under one cover and file mark, presented as one requested charge, in fact embraced six different requested instructions combined in one, under one signature of attorneys for defendant and under one mark of refusal by the judge, and where two of the issues were not applicable to any material issue presented by the pleadings and supported by the evidence, the refusal of the requested charge was proper even though the other four issues should have been given is properly refused is proper, since it was defendant's duty to have so framed the special charges that each separately would have presented to the court a correct issue.

**10. Appeal and error ⊚⇒981—New trial ⊚⇒99 —Refusal of new trial for newly discovered evidence discretionary with court.**

The refusal of a new trial for newly discovered evidence is within the sound discretion of the trial court, and will not be reviewed in the absence of an abuse of such discretion.

**11. New trial ⊚⇒99—Denial of new trial for newly discovered evidence held not abuse of discretion.**

The refusal of a motion for a new trial on the ground of newly discovered evidence, where such evidence was cumulative, or for impeachment purposes, and where there was no showing that such evidence could, in the exercise of proper diligence, have been discovered and used at the trial, *held* not an abuse of discretion.

**12. Judgment ⊚⇒248—Refusal to enter judgment for vendor for amount due from purchaser on holding reconveyance deed a vendor's lien note extension agreement held not error.**

In purchaser's action against vendor to have instrument purporting to reconvey land to vendor declared an agreement for extension of a vendor's lien note, on the ground that purchaser executed instrument with the understanding that it was such extension agreement, in which there was no issue as to the amount due vendor from purchaser, and the evidence did not with certainty show the amount so due, court's refusal to enter judgment for vendor for amount due on declaring the instrument a note extension agreement *held* not error.

Appeal from District Court, Limestone County; A. M. Blackmon, Judge.

Suit by Walter Bell and wife against W. M. White. Judgment for plaintiffs, and defendant appeals. Reformed and affirmed.

W. T. Jackson and C. S. & J. E. Bradley, all of Groesbeck, for appellant.

Prince & Wroe, of Mexia, and Richard Mays, of Corsicana, for appellees.

VAUGHAN, J. Appellees, as plaintiffs, filed their suit against appellant, as defendant, on February 23, 1921, alleging substantially that on November 1, 1911, appellant conveyed to appellee Walter Bell the land involved; that appellee Walter Bell executed 10 vendor's lien notes of $850 each, due and payable to appellant respectively on November 1, 1912, and each succeeding November 1st, up to and including 1921; that appellees took possession of said land, and occupied same continuously thereafter; that appellees are husband and wife, and are ignorant negroes; that on November 1, 1916, appellant requested appellee Walter Bell to bring his wife, Frances Bell, to appellant's office 'to renew said notes, some of which were then about barred by the statute of limitation; that appellees accordingly went to appellant's office for that purpose, and appellant handed them a paper to sign, and they, believing it to be a renewal of. the notes mentioned, signed it; that on or about November 1, 1920, they learned that appellant was claiming the land under a deed from appellees, and that appellant had a deed dated November 11, 1916; that appellees signed such deed be-

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lieving it to be a renewal of the said vendor's lien notes; that the land was appellees' homestead; that the notary public who took the acknowledgment of appellee Frances Bell did not examine her separate and apart from her husband, appellee Walter Bell, nor explain it to her, and that she did not declare to the notary that she willingly signed the same, etc.; that said deed of date November 11, 1916, is a cloud upon appellees' title to said land.

The purpose of said suit was to have the instrument of date November 11, 1916, construed as an extension agreement of the vendor's lien notes held by appellant against appellees on the date of the execution of said instrument, and for the removal of the cloud created by said deed upon the title of appellees to the tract of land conveyed by appellant to appellee Walter Bell on the 1st day of November, 1911.

Appellant answered, in substance, that he sold the land to appellee Walter Bell by an executory deed for the 10 notes of $850 each, due as stated, together with interest, and providing for attorney's fees; that the vendor's lien was specially retained, both in the deed and in the notes, to secure their payment, all constituting an executory contract; that appellees wholly failed to pay said notes, or any part of them; that on November 11, 1916, appellees executed a deed of reconveyance to appellant of said land in cancellation of said notes, and that same is a valid deed of conveyance of said land from appellees to appellant; that appellees failed to comply with said executory contract, and, on November 11, 1916, and on various other dates prior thereto, appellant elected to and did rescind said contract.

By first supplemental petition appellees, replying to said answer, alleged substantially the following:

"That appellant had not rescinded said conveyance for failure to pay the indebtedness secured by lien upon the land, and, in the alternative, if they are mistaken in the allegation as to appellant's failure to disaffirm and rescind his conveyance of the land to appellees, and it should be held that appellant did, or undertook to, disaffirm and rescind said conveyance, then, in view of the large sums of money paid by appellees on the purchase price of said land, that it would be inequitable and unjust to permit the appellant to insist upon said disaffirmance and rescission without notice to appellees and without an offer to refund said payments to appellees, and that appellees had and have such an equity in said land, even if the appellant had the right to and did exercise the right of disaffirmance and rescission, as would not preclude, under the circumstances, appellees from exercising the right which they have to prevent such disaffirmance and rescission by paying to appellant such amounts as may be lawfully found to be due appellant by appellees upon said land, and the appellees here, now, offer to pay appellant whatever amount is so due by them, and now tender to the appellant in open court the amount so due."

Appellant replied that appellees had never paid so much as interest on the debt or rent for the premises, and the debt was much larger than in its origin; that all of the notes given for said land had been canceled and surrendered, except note No. 10, which was not due, and which would have been paid by him but for the wrongful acts of appellees in preventing the payment of said note; and that appellant tendered into court enough money to pay same with all interest to maturity, and offered to comply with any order the court should make to protect appellees against liability on same.

The case was submitted to the jury on the following special issues:

"Did the plaintiffs, Walter Bell and wife, Frances Bell, believe and understand at the time they signed the deed on November 11, 1916, to the defendant, W. M. White, that they were thereby executing a contract of extension of the vendor's lien notes, or some of them, then held by the defendant, White? This question you will answer 'Yes' or 'No.'

"Did the plaintiffs, Walter Bell and wife, Frances Bell, at the time of the execution by them of the instrument of date November 11, 1916, know and understand that they were thereby reconveying to W. M. White the 170 acres of land in question, and in said instrument described? This question you will answer 'Yes' or 'No.'

"Did Walter Bell agree with W. M. White to convey the land in question to him, shortly before the execution of the instrument dated November 11, 1916? This question you will answer 'Yes' or 'No.'

"When Walter Bell executed the instrument dated November 11, 1916, did he know and understand that it was a deed of reconveyance of the land? This question you will answer 'Yes' or 'No.' "

Which questions were answered by the jury as follows:

"To question No. 1, Yes; to question No. 2, No; to question No. 3, No; to question No. 4, No."

On said answers judgment was entered for appellees that the deed of date November 11, 1916, was not a valid deed, but an extension of purchase-money notes, and canceled same as a deed, and that the deed of date November 1, 1911, was a valid deed, and in full force and effect. From said judgment this appeal is prosecuted.

Assignments of error 1 to 8, inclusive, involve the same question; therefore will be discussed as presenting but one proposition, to wit: That the court erred in permitting appellees to introduce in evidence, over appellant's objections, the rendition of the property involved in this suit for taxation purposes by Walter Bell for the years 1917, 1918, 1919, and 1920, and the statutory oath of ap-

pellee Walter Bell to each of said renditions, appellant having testified and admitted that Walter Bell had rendered the land in dispute for taxation for said years, and appellee Walter Bell having testified to the same facts. The tax rendition sheets for said years show that appellee Walter Bell rendered 140 acres of the A. Varela and 30 acres of the P. Varela surveys, the land in dispute, as the owner thereof, on January 1, 1917, 1918, 1919, and 1920, and subject to taxation. Said renditions were offered in connection with the testimony of Tom Cain, tax assessor of Limestone county, to the effect that same were signed before his deputy, J. B. Davis, and were on file in his office; that the rendition for each of said years was made by appellee Walter Bell to J. B. Davis, deputy assessor under Tom Cain, county tax assessor. Said witness further testified:

"These records I have here are permanent records from A to C of the rendition rolls for three years, 1917, 1918, and 1919, and one sheet for Walter Bell for 1920, which has not yet been bound. These rendition sheets are signed by Walter Bell, and also by J. B. Davis, my deputy, who assessed property for the Mexia precinct in Limestone county."

Appellant objected to the introduction of said tax rendition sheets and the oath of appellee Walter Bell thereto in evidence on the following grounds: (a) Because same were immaterial; (b) said documents were not verified in any way. The records objected to were the original tax rendition sheets duly sworn to by appellee Walter Bell as required by law, and therefore constituted, and were, proper records of the tax assessor's office of Limestone county, and, as such, were admissible in evidence, not for the purpose of showing title, but that certain property had been rendered for taxes, the name of the party rendering same as owner, and the valuation placed thereon for tax purposes. Vernon's Sayles' Texas Civil Statutes (1914) art. 3694. However, the controlling issue of fact in the case was as to whether the instrument of November 11, 1916, was a deed or mortgage. Appellant and appellees testified in complete contradiction; that is, appellant testified that it was a deed and was intended to be such by the parties thereto, and appellees testified that it was a mortgage only, intended to secure the payment of certain purchase-money notes by extension of the time of payment and to preserve the lien.

Thereafter appellant undertook to impeach appellee Walter Bell, the purpose of the impeaching evidence offered by appellant being to discredit appellee Bell with reference to his contention concerning the purpose for which he understood said instrument to have been executed, as well as to discredit his testimony concerning his claim of ownership to the property after the execution of said instrument of date November 11, 1916. Evi-

dently to show that appellee Walter Bell had a motive of recent origin which induced him to testify falsely as to the instrument in question and as to his contract with appellant preceding its execution, the following evidence was offered:

Appellant testified that appellee Walter Bell never did set up any claim to the land until recently; that "it was after that oil discovery that I first heard of Walter Bell setting up claim to the land. When he deeded the land back to me in 1916 there was no oil discovery at Mexia."

[1] It was further established by the evidence that what was known as the "Discovery well" had been brought in in December, 1920, as an oil gusher, and that the land in controversy was situated not far therefrom. The rendition sheets objected to were made long before the discovery of oil, and at a time when such motive would have been impossible, as appellee Walter Bell could not reasonably have anticipated that oil would be discovered, and no improper motive on account of such anticipation could have actuated said appellee in asserting ownership of the land through the rendition of same for taxes. Therefore, to corroborate the testimony of appellee Walter Bell, all of his relevant acts and declarations concerning said transaction were admissible in rebuttal of the attack as made upon his testimony, including the rendition of the property for taxes after the execution of said instrument, and, under this theory of the case, we think the circumstances authorize the introduction of said rendition sheets in evidence. Lewy v. Fischl, 65 Tex. 311; Burch v. State, 49 Tex. Cr. R. 13, 90 S. W. 168; Houston Elec. Co. v. Faroux, 59 Tex. Civ. App. 232, 125 S. W. 922; T. & P. Ry. Co. v. Raney, 86 Tex. 363, 25 S. W. 11.

It may be conceded that the evidence was subject to the objection that same was cumulative. However, the difference in the form of evidence cannot be altogether disregarded. The evidence objected to was in the form of a public record, open to the inspection of all citizens alike, and on inspection would have disclosed in no uncertain terms not only the character of claim being asserted by the rendition of the property involved for taxes, but the date of each act asserting ownership and the name of the person making claim to the property to the extent of rendering same for taxation.

[2] The oral testimony was simply an admission on the part of appellant that such renditions had been made, and on the part of appellee Walter Bell, likewise, that he had made the rendition, but, the two combined not possessing the probative effect of the record of the yearly rendition made by appellee Bell, appellees were entitled to the benefit of such evidence before the jury as constituting the most expressive evidence bear-

ing upon such issue from appellees' point of view. Therefore we do not hold that said evidence was in all respects cumulative; but, even conceding same to be, the introduction of such evidence was within the sound discretion of the trial court, and his ruling will not be revised in the absence of abuse, which does not here appear. We therefore overrule said assignments.

[3] Assignments 9 to 13, inclusive, each relate to alleged error in refusing to permit appellant to prove by the witnesses R. B. Bass, W. J. Keeling, J. H. Stewart, and Geo. L. Peyton that they knew J. W. Kincheloe, the witness to the deed in dispute, and the officer who certified to the acknowledgment of appellees to same in Mexia where he resided during many years before his death; that the witnesses knew said Kincheloe's general reputation in Mexia, where he resided, for honesty and fair dealings, and that such reputation was good. Said assignments cannot be sustained. Kincheloe's reputation and character were not attacked or put in issue by appellees. He was not a party to the suit, had not testified as a witness, and had been dead several years. He was not charged with being in conspiracy with White to perpetrate a fraud upon appellees, or charged with making any false representations to appellees as to the character of the instrument. At most it was only claimed that he did not explain the character of the instrument to Frances Bell, the wife of appellee Walter Bell, or privily examine her apart from her husband. The only issue, in fact, presented by the pleadings concerning the certificate of acknowledgment made by Kincheloe was not submitted to the jury. The testimony objected to did not constitute an attack upon the reputation and character of Kincheloe as a man or official authorizing proof in support thereof. Therefore evidence of his general reputation for honesty and fair dealings was not admissible for the purpose of corroborating his certificate of acknowledgment. T. & P. Ry. Co. v. Raney, supra.

[4] We are inclined to believe that appellees' objection to said assignments, being considered because the several bills of exception upon which they are based are insufficient in law, in that same are too general to raise the question urged by appellant, should be sustained. Jenkins et al. v. Morgan (Tex. Civ. App.) 187 S. W. 1091. Neither the assignments of error nor the bills of exception upon which they are based state what objections were made by appellees to the question: "Was the general reputation of J. W. Kincheloe during his lifetime in Mexia, where he lived, for honesty and fair dealings good or bad?"—same only showing that an objection thereto was made by appellees and sustained without stating the character of objection presented for the consideration of the court. However, under the intimation contained in Morrison v. Neely (Tex. Com. App.) 231 S. W. 728, we resolved the doubt in favor of said assignments and considered same. The assignments, being without merit, are overruled.

[5] The court refused to instruct the jury at the request of appellant to return a verdict for him, which action of the court appellant presents to us for review by his fourteenth assignment.

On the trial the following facts were established by the evidence:

"On November 1, 1911, appellant conveyed the land in controversy to appellee by warranty deed. The consideration was $8,500, evidenced by 10 notes of even date for $850 each, the first being due November 1, 1912, and yearly thereafter until all were paid, the last of said notes becoming due on November 1, 1921.

"Appellee was tenant upon the land in controversy for the three years preceding his purchase in 1911, and has continuously resided upon the land until the present time, and since his original purchase in 1911 has payed no rents to appellant.

"Appellant, while acting as guardian of Lyles' minors, sold two of the notes to his ward's estate. By indorsement they were made superior and first liens over the first notes of the same series; the last note for $850 matures on November 1, 1912, and is still outstanding and unpaid.

"Appellant was succeeded as guardian by Dave Lyles in 1918, and at that time parted with the actual possession of the two notes bearing an indorsement showing that they were then valid and outstanding notes, and on that date they were used to pay appellant's indebtedness to his ward, stating to his successor that they were both first-lien notes.

"By indorsement they were made superior and first liens over all other notes of the series, and later the two notes were sold by the new guardian to M. C. Sanders. Later Sanders sold and transferred the last note to W. J. Wright. Said two notes were outstanding and unpaid when the instrument of November 11, 1916, was executed. After oil was discovered, and shortly before the institution of the suit, and after maturity, appellant paid off note No. 9, maturing in 1920, to Sanders, and also interest on note No. 10, maturing in 1921."

That during the four years between the execution of the deed and the filing of this suit appellees paid to appellant $6,035.26. Of this sum $2,897.83 was applied by appellant to the payment of an account due him by appellee Walter Bell for supplies and repayment of borrowed money, leaving a balance in appellant's hands of $3,137.43 to be applied as a credit on the vendor's lien notes executed by appellee Walter Bell to appellant in the purchase of the land involved. Appellees had made permanent and valuable improvements on the land purchased from appellant, putting in cultivation about 25 acres of Bermuda grass, cleared 8 acres of woodland, built a room to the house on said land out of new lumber purchased by appellees since the execution of the instrument of date November 11, 1916. Appellant, although urged and pressed to do so, failed

to produce notes Nos. 1 to 8, inclusive, of said series.

On the question of rescission appellant testified as follows:

"In reply to your question when it was claimed I undertook to rescind this trade with Walter Bell, I will say that I have considered it rescinded ever since the date of the deed, and, with reference to whether or not, that is my answer, and I will stand by it. I will tell you I have rescinded it. I rescinded it the date of that deed, November 11, 1916. In legal sense, I think I have rescinded that trade ever since. I have not gone over it in my mind, and said, 'I hereby rescind that trade.' I first claimed that I rescinded the trade on November 11, 1916; that is when I had them deed the land back. Yes, sir; at that very time two of those notes (Walter Bell's) were outstanding, and I have received value for them."

Appellee Walter Bell testified in part as follows:

"I turned over to him my cotton every year. I turned over all I made; all I gathered. I bought the place in 1911 and every year since 1911 I have turned over all the cotton I have made, for the purpose of paying for the place. No; I have never paid him any rents on the place since I bought it, and I never promised to pay any; I have never had any rental contract with him. I have never paid him any corn rent. I have not paid him any money rent."

Appellee Walter Bell contracted to pay appellant $30 per acre for the land. In 1916 it was worth about $60 per acre. Tax receipts issued to appellee Walter Bell for the years 1918, 1919, and 1920 were introduced in evidence showing the payment of taxes by him for said years. From the time he purchased the land he paid the taxes each year except one, when same were delinquent, and he paid for that year, including accrued penalties, interests, and costs.

The instrument in question was introduced in evidence by appellant, including certificate of acknowledgment before Kincheloe. The instrument upon its face is a warranty deed, and was executed on November 11, 1916, and both of appellees executed same by making their mark. The certificate of acknowledgment before Kincheloe as a notary public is upon its face in compliance with the statutes. Appellee Walter Bell testified:

"That he was in Mexia one day and saw appellant, who told him that one of his notes was about to run out, and, the first time me and my wife was in town, to step up to his office and sign the renewal of the note. That maybe a week or two later appellee and his wife did go to appellant's office. That appellant got up and got the note, and told me to sit down and sign my name, and then he called my wife and she said she could not write, and appellant asked her if she wanted him to write it, and she said 'Yes,' and he writ it, and she touched the pen. We then went down stairs and we met Judge Kincheloe, and he said something to Judge White, and I did not know what it was,

and then me and my wife held up our right hands and he took our acknowledgments, and we went on about our business. Judge Kincheloe did not ask that I go away and my wife stay in his presence, so he could talk to her. He did not say anything. We were not in Judge Kincheloe's office, but were on the streets. He did not ask my wife whether she wished to retract it. He did not read the paper over to us, nor did he tell us what it was. Judge White, in his office, did not read the paper over to me. I cannot read or write, and I relied on what Judge White said to me about the instrument, and I believed what he said. I had lived on the place three years before I bought it, and I had confidence in Judge White."

[6] We conclude that the above evidence was sufficient to authorize the verdict rendered by the jury, and, although a different conclusion could have been reached by the jury in determining the issues submitted, which would have been sustained by other testimony not quoted above, it is not our province to usurp the prerogative conferred by law exclusively upon juries. T. & P. Ry. Co. v. Raney, supra.

[7] Appellant's right to rescind the conveyance, and whether or not he had in fact rescinded same, were not submitted by the court as issues to be determined by the jury, nor was the court requested by appellant to submit such issues; and, as the evidence is sufficient to sustain a finding adverse to appellant as to both issues, it will be presumed in the state of the pleadings and the issues submitted, as well as requested, that the trial court determined such issues in favor of appellees. We therefore overrule said assignment and all propositions thereunder.

What we have said in disposing of the fourteenth assignment applies with equal force to the thirtieth assignment, presenting, in effect, the same question. Therefore said assignment is overruled.

Appellant's assignments of error 15 and 16, involving the same question, will be considered together.

The contract of November 11, 1916, assuming that appellee Walter Bell had the legal right to execute it independent of his wife, Frances Bell, was nevertheless entered into and made between appellant and appellees, Walter Bell and Frances Bell, and it was for that reason proper for the jury to determine her understanding of the contract at the time she executed the instrument. The court submitted the question from two viewpoints: In questions 1 and 2 the court asked the jury if both appellees knew and understood that at the time they signed the instrument they were thereby executing a contract of extension of the notes, or some of them, then held by appellant; and did both appellees know and understand they were thereby reconveying to appellant the land in question. To the first question the jury answered "Yes," and to the second ques-

tion, "No." In questions 3 and 4 the court submitted the issue to the jury as to whether appellee Walter Bell only agreed with the appellant to convey him the land in question shortly before the execution of the instrument, and did appellee Bell know and understand it was a deed of reconveyance of the land. The jury answered both questions "No."

[8] If it be true, as contended by appellant, that Frances Bell's understanding of the instrument was immaterial and unnecessary, the fact remains that the jury found that appellee Walter Bell understood and believed he was executing an extension agreement of the note, or notes, then due and owing by him to appellant, which would entitle him to have a proper construction placed upon the instrument in question. If it be conceded that it was immaterial to any issue in the case whether the wife of appellee Walter Bell understood the nature and contents of the instrument signed, or whether she understood that same was a deed or contract renewing part of the indebtedness against the land, or whether she knew and understood that she was executing a deed to appellant, the submission of such immaterial issues not being calculated to confuse the jury in passing upon the material issues submitted as embraced in questions 3 and 4, the submission of such immaterial issues was harmless error, and it was proper for the court to reject same and render judgment upon the findings of the jury upon the material issues submitted, same being sufficient to dispose of the case as made both by the pleadings and the evidence. We therefore overrule said assignments as not presenting any material error.

Assignments 17 to 20, inclusive, relate to the refusal of the court to submit to the jury the following special issues requested by appellant:

"Did W. M. White do all that was in his power to take up and pay off the outstanding note No. 10 of $850, which is now owned by Mr. Wright.

"Would W. M. White have taken up and paid off the note No. 10 but for the interference of plaintiffs, or their attorneys?

"Did plaintiffs, by their attorneys, interfere and prevent White being able to take up the note No. 10?

"Would the payment into court by W. M. White of the amount of note No. 10, together with interest to its maturity, protect and save plaintiffs harmless from liability on the note No. 10?

"Did W. M. White intend to rescind the sale that he had previously made to plaintiffs by the transaction of November 11, 1916, and did he think he had done so by a conveyance from plaintiffs to him of the land in question?

"Did W. M. White continuously, after the transaction of November 11, 1916, to the present time, think he had rescinded the sale of the land in question which he had previously conveyed to plaintiffs, and that he had a valid

conveyance of said land from plaintiffs back to him?"

These issues are comprised in appellant's requested charge No. 2, which was upon one piece of paper, under one cover and file mark, presented as one requested charge, but, in fact, embracing six different requested instructions combined in one, under one signature of attorneys for appellant, and under one mark of refusal by the district judge. The law and rules for district and county courts provide that each requested issue or instruction shall be separately written and requested, and not combined as is the case here. Jenkins et al. v. Morgan, supra; article 1984a, Vernon's Sayles' Civil Stats. 1914; rule 61, Rules for District and County Courts (142 S. W. xxi).

[9] Said special issues 5 and 6 requested by appellant to be submitted to the jury were not applicable to any material issue presented by the pleadings and supported by the evidence, for as to whether or not appellant intended to rescind the sale he had previously made to appellee Walter Bell by the transaction of November 11, 1916, was not an issue before the court, as what he intended to do could not determine the rights of appellees, and certainly the thoughts entertained by appellant after the transaction of November 11, 1916, were of no moment in determining what actually occurred in such transaction between the parties, and, even if properly requested, it would have been error for the court to have submitted said issues to the jury.

Therefore, conceding that said special issues, 1, 2, 3, and 4, if properly requested, should have been given as being applicable to issues properly before the court to be determined by the jury, same having been confused with two erroneous issues requested by appellant, the court did not err in refusing the entire instrument denominated "appellant's special charge No. 2," which embraced all of said issues, as it did not devolve upon the court to separate the issues properly requested to be submitted from issues improperly requested and thus modified to give the charge. It was the duty of appellant to have so framed the special charges requested by him that each, separately, would have presented to the court a correct issue. Waggoner et al. v. Zundelowitz (Tex. Com. App.) 231 S. W. 721; Pullman Co. v. Gulf, C. & S. F. Ry. Co. (Tex. Com. App.) 231 S. W. 741.

As we view the case, it was immaterial under the facts and issues of same whether appellant, after the execution of the instrument of date November 11, 1916, thought he had rescinded the sale of the land to appellees in 1911, or thought he had a valid reconveyance to the land in question. There was no question of mutual misunderstanding or of fraud, deceit, or misrepresentation by Bell. The question was: "Was it a reconveyance deed or was it an extension of ven-

dor's lien notes contained in the deed of conveyance executed by appellant to appellee Walter Bell on November 1, 1911? This issue was properly submitted by the court to the jury under special issues Nos. 3 and 4, and found adversely to the contention of appellant under evidence sufficient to support the conclusion reached by the jury. Said assignments are therefore overruled as presenting no material error.

The twenty-first and twenty-second assignments apply to the refusal of the court to submit to the jury said special issues 5 and 6 "of special charge No. 2" requested by appellant. The conclusions reached by us in the disposition of assignments 17 to 20, inclusive, necessarily require these assignments to be overruled.

Further, it was immaterial under the facts and issues of the case whether appellant intended to rescind the sale of the land to appellees in 1911 by the instrument of November 11, 1916, and whether or not he thought he did so. The questions were: What were the representations, acts and conduct of appellant? and What did appellees do and understand they were doing based upon such acts and conduct of appellant? These issues were submitted to and decided by the jury adversely to appellant. We therefore overrule said assignments.

The twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth assignments of error, respectively assail the answers of the jury to special issues Nos. 1, 2, 3, and 4 on the ground that same are contrary to and not supported by the great weight and preponderance of the evidence.

The answers of the jury to said special issues are not contrary to the great weight and preponderance of the evidence, but are amply supported by the evidence set out in this opinion. Therefore said assignments are overruled.

The twenty-seventh assignment presents the following question: That the testimony was insufficient to impeach the certificate of acknowledgment to the deed in question, because the appellant's testimony, including the certificate itself, showed the deed was properly acknowledged, and there was no testimony impeaching the certificate of acknowledgment except that of appellees, whose acknowledgments are purported to have been certified. The record fails to disclose any merit in this assignment, as the question of the sufficiency of the certificate of acknowledgment taken by Kincheloe, the notary public, to the instrument of November 11, 1916, was not in issue, not submitted to the jury, nor in any respect passed upon, and was not material upon the issue as to what the contract was between appellant and appellees. However, appellant had the benefit of the evidentiary value of said certificate without any evidence before the jury tending to impeach the act of the officer in making it. Said assignment is therefore overruled.

Assignments 28 and 29 complain of the act of the trial court in refusing to grant appellant a new trial because of the alleged newly discovered evidence of John H. Sweet and Blake Smith. Prior to the trial had in the court below, and on December 21, 1920, appellant executed and delivered to Sweet a mineral lease on the land in controversy. Sweet testified as a witness in behalf of appellant in rebuttal of the case made by appellees. He testified that he knew Walter Bell, knew his reputation for truth and veracity, and that same was not good. He made an affidavit which was attached to appellant's motion for new trial that appellee Walter Bell stated to him that at one time he had a deed to the land, but that he had reconveyed same to appellant, and that he was then occupying the farm as tenant of appellant. Sweet claimed in the affidavit, among other things, that the reason he did not testify to said facts when he was on the witness stand was that he did not know whether it was admissible evidence. The alleged newly discovered evidence of Sweet was similar to other evidence that had been offered by appellant upon the trial, to wit: Fred Bennett testified that Walter Bell told him upon being approached to adjust the boundary line of the land involved that witness would have to see appellant, as the place belonged to him, and to the same effect was the testimony of the witness Blake Smith and McKinney.

Blake Smith was a witness for appellant, present during the trial of the case in the court below, and testified to being with McKinney at the time of a discussion which was had between McKinney and Smith with appellee Walter Bell with reference to obtaining an oil lease on the property in controversy, upon which appellees were then living. He further testified that appellee Walter Bell told him he could not lease the place he was living on because it belonged to appellant. Smith was unable in the courtroom to identify Walter Bell as the particular negro to whom he talked, but McKinney, who was with Smith at the time of the alleged conversation with Walter Bell, distinctly and positively identified appellee Walter Bell as being the one with whom he and Smith had their conversation.

The evidence claimed to be newly discovered would largely be cumulative or for impeachment purposes, and it is not shown that by the exercise of proper diligence same could not have been discovered and used at the trial from which this appeal is prosecuted.

[10, 11] We do not think the court abused his discretion in refusing to grant a new trial on the ground of alleged newly discovered evidence. Railway Co. v. Scarborough, 101 Tex. 436, 108 S. W. 804; Pelly v. Ry. Co. (Tex. Civ. App.) 78 S. W. 542; Gilliland v. Ellison (Tex. Civ. App.) 137 S. W. 168; Garrett v. Ry. Co. (Tex. Civ. App.) 172 S. W. 187; Moore v. Lehmann (Tex. Civ. App.) 165

S W. 81. The refusal of the motion for new trial on the ground of newly discovered evidence was within the sound discretion of the trial court, which will not be reviewed in the absence of an abuse of such discretion. No such abuse of such discretion is revealed by the record in this cause. Kersh v. Matthews (Tex. Civ. App.) 186 S. W. 783; Feagins v. Texas, etc., Supply Co. (Tex. Civ. App.) 185 S. W. 961; House v. Filgo (Tex. Civ. App.) 163 S. W. 373. Said assignments are therefore overruled.

By the thirty-first assignment it is claimed that the court erred in refusing to enter judgment for appellant against appellee Walter Bell for his debt, with interest to date, with such equitable provisions for the payment of outstanding notes as the court should deem proper, and adjudging said debt secured by vendor's lien upon said land, and foreclosing same against the land as to appellees, and that the adjudication that the deed from appellees to appellant of November 11, 1916, was invalid should have been limited, holding said deed valid and binding until appellees had paid appellant's debt and interest, etc.

The trial court did not err in refusing to render judgment for appellant upon the notes held by him against appellee Bell, for the reason that there were no pleadings upon which a judgment in favor of appellant against appellees on the notes held by appellant could be based, and there were no pleadings by appellee which supplied such want of pleadings by appellant, and no evidence from which the amount due could be ascertained.

[12] The state of the evidence, as well as the pleadings, was such that the trial court could not render judgment in favor of appellant against appellee Water Bell for any amount, for the reason that the issue as to the amount due by appellee Walter Bell to appellant was not involved or tried out in the evidence. The evidence showed such uncertainty as to the amount due appellant by appellee Walter Bell that it could not have been determined by the trial court in order to base a judgment thereon in favor of appellant against appellee Walter Bell as an undisputed fact. Even if the issue had been properly before the court by pleadings and evidence, so as to have required its determination, it would have been necessary to submit it to the jury trying the case, for, being a controverted issue, the verdict of the jury alone would have placed it in position to be the basis of a judgment, as the judgment of the trial court must be entered in conformity with the verdict, and that whether the verdict be correct or not. Heimer v. Yates (Tex. Com. App.) 210 S. W. 680; Ablowich v. Greenville Nat. Bank, 95 Tex. 429, 67 S. W. 79, 881; Scott v. Farmers' & Merchants' Nat. Bank (Tex. Civ. App.) 66 S. W.

493. Finding no error present in the record as contended by said assignment, same is overruled.

It is necessary that the judgment as entered be reformed, so that whatever unpaid vendor's lien notes and vendor's lien may exist against the land involved to secure the payment of said notes will remain unimpaired and unaffected by the judgment of the trial court. The judgment so reformed is affirmed.

Reformed and affirmed.